# 25-1197

# United States Court of Appeals for the Second Circuit

CHRISTOPHER DOLCE, SHINAIDE MCALEAVEY–POLLEY and SARAH ECKE,

*Plaintiffs-Appellants,*

-and-

NEW YORK LGBT NETWORK, INC.,

*Plaintiff,*

v.

CONNETQUOT CENTRAL SCHOOL DISTRICT, CONNETQUOT BOARD OF EDUCATION, LYNDA G. ADAMS, REZA KOLAHIFAR, JACLYN NAPOLITANO-FURNO, LEE KENNEDY and MICHAEL MORAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF NEW YORK

## BRIEF FOR PLAINTIFFS-APPELLANTS

LIEB AT LAW, P.C.
*Attorneys for Plaintiffs-Appellants*
308 West Main Street, Suite 314
Smithtown, New York 11787
(646) 216-8009
cheryl@liebatlaw.com

3738

ELECTRONIC PARALEGAL

# TABLE OF CONTENTS

*Page*

PRELIMINARY STATEMENT .......... 1

JURISDICTIONAL STATEMENT .......... 1

A. District Court Jurisdiction .......... 1

B. Court of Appeals Jurisdiction .......... 1

C. Timeliness of Appeal .......... 2

D. Finality of Order .......... 2

STATEMENT OF THE ISSUES .......... 2

STATEMENT OF THE CASE .......... 3

A. Concise Statement of the Case .......... 3

B. Procedural History .......... 5

C. Rulings for Review .......... 6

SUMMARY OF THE ARGUMENT .......... 7

ARGUMENT

STANDARD OF REVIEW .......... 10

POINT I

PLAINTIFFS PLAUSIBLY ALLEGED VIOLATION OF THEIR CLEARLY-ESTABLISHED RIGHTS AGAINST VIEWPOINT DISCRIMINATION .......... 11

A. *The Ban was Discriminatory As-Applied to Plaintiffs* .......... 18

B. *The Ban was Facially Discriminatory and Constituted a Prior Restraint on Free Speech* ..........24

C. *Grant of Qualified Immunity was Reversible Error* ..........26

POINT II

THE DISTRICT COURT ERRED IN DISMISSING THE DISCRIMINATION CLAIMS UNDER TITLE VII AND TITLE IX ..........28

POINT III

THE EQUAL PROTECTION CLAIMS ARE NOT DUPLICATIVE OF THE FIRST AMENDMENT CLAIMS AND WERE ADEQUATELY PLED ..........34

POINT IV

THE DISTRICT IS LIABLE UNDER *MONELL* ..........37

POINT V

THE COURT BELOW ERRED IN DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS..........39

POINT VI

PLAINTIFFS SHOULD HAVE BEEN GRANTED LEAVE TO CURE ANY PURPORTED FACTUAL DEFICIENCIES ..........40

CONCLUSION ..........41

# TABLE OF AUTHORITIES

*Page(s)*

**Cases:**

*Amidon v Student Ass'n of State Univ. of New York at Albany*,
508 F3d 94 [2d Cir 2007] ....................................................................12

*Anderson News, LLC v Am. Media, Inc.*,
680 F.3d 162 [2d Cir. 2012] ................................................................10

*Anderson v Amazon.com, Inc.*,
23-CV-8347 [AS], 2024 WL 2801986 [SDNY May 31, 2024]....................33

*Ashcroft v al-Kidd*,
563 U.S. 731 [2011]...........................................................................27

*Back v Hapoalim*,
24-1064-CV, 2024 WL 4746263 [2d Cir Nov. 12, 2024]............................30

*Bell Atl. Corp. v Twombly*,
550 US 544 [2007]..............................................................................11

*Bethel School District v Fraser*,
478 U.S. 683 .....................................................................................15

*Bostock v Clayton County, Georgia*,
590 US 644 [2020]..................................................................30, 32, 35

*Brown v City of Oneonta*,
221 F.3d 329 [2d Cir.1999] .................................................................34

*Buon v Spindler*,
65 F4th 64 [2d Cir 2023] ...............................................................10, 30

*Byrd v Middletown Bd. of Educ.*,
3:24-CV-207 [VAB], 2024 WL 4871885 [D Conn Nov. 22, 2024] .............26

*City of Cleburne v Cleburne Living Ctr.*,
473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 [1985] ................................34

*Crews v City of Ithaca*,
3:17-CV-213 [MAD/ML], 2021 WL 257120 [NDNY Jan. 26, 2021]..........30

*Fin. Guar. Ins. Co. v Putnam Advisory Co., LLC*,
783 F.3d 395 [2d Cir. 2015] ..........10

*Foman v Davis*,
371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 [1962] ..........40

*Garcetti v Ceballos*,
547 U.S. 410 [2006]..........8, 26, 28

*Guiles ex rel. Guiles v Marineau*,
461 F3d 320 [2d Cir 2006] ..........12, 13, 16, 18

*Harlow v Fitzgerald*,
457 U.S. 800 [1982]..........27

*Hazelwood School Dist. v Kuhlmeier*,
484 U.S. 260 [1988]..........*Passim*

*Hu v City of New York*,
927 F3d 81 [2d Cir 2019] ..........35

*Hyman v Abrams*,
630 Fed Appx 40 [2d Cir 2015]..........27

*James v Bd. of Ed. of Cent. Dist. No. 1 of Towns of Addison et al.*,
461 F2d 566 [2d Cir 1972] ..........11, 13, 14

*Johnson v Poway Unified School Dist.*,
07 CV 783 BEN [LSP], 2008 WL 5657801
[SD Cal Sept. 4, 2008]..........20, 21, 22

*Lamb's Chapel v Ctr. Moriches Union Free School Dist.*,
508 US 384 [1993]..........7, 16, 21

*Lee-Walker v New York City Dept. of Educ.*,
712 Fed. Appx. 43 [2d Cir. 2017] ..........26

*Lilakos v New York City*,
808 Fed Appx 4 [2d Cir 2020]........................................................................36

*Littlejohn v City of New York*,
795 F.3d 311, 2015 WL 4604250...................................................................29

*Luce v Edelstein*,
802 F.2d 49 [2 Cir.1986] ..............................................................................40

*M.B. ex rel. Martin v Liverpool Cent. School Dist.*,
487 F Supp 2d 117 [NDNY 2007] ................................................................24

*Matal v Tam*,
582 US 218 [2017]........................................................................................16

*McKenna v Wright*,
386 F3d 432 [2d Cir 2004] ...........................................................................27

*Muldrow v City of St. Louis, Missouri*,
144 S Ct 967 [2024].......................................................................................32

*New York Times Co. v. U.S.*,
403 U.S. 713 [1971].................................................................................. 24-25

*Peck ex rel. Peck v Baldwinsville Cent. School Dist.*,
426 F3d 617 [2d Cir 2005] .............................................................18, 23, 24

*Pyke v Cuomo*,
258, F.3d 107 [2d Cir.2001] .........................................................................34

*Reed v Town of Gilbert, Ariz.*,
576 US 155 [2015]...................................................................................11, 17

*Ronzani v Sanofi S.A.*,
899 F2d 195 [2d Cir 1990] ...........................................................................40

*Rosenberger v Rector and Visitors of Univ. of Virginia*,
515 US 819 [1995]......................................................................7, 11, 16, 17

*Savino v Town of Southeast*,
983 F Supp 2d 293 [SDNY 2013], *affd*,
572 Fed Appx 15 [2d Cir 2014]....................................................................34

*Saxe v State Coll. Area School Dist.*,
240 F3d 200 [3d Cir 2001] ..........................................................................13, 18

*Shahriar v Smith & Wollensky Rest. Group, Inc.*,
659 F3d 234 [2d Cir 2011] ..........................................................................39

*T.S. Haulers, Inc. v Town of Riverhead*,
190 F Supp 2d 455 [EDNY 2002]...............................................................24, 35

*Tinker v Des Moines School District*,
393 U.S. 503 [1969]......................................................................................*Passim*

*Tolan v Cotton*,
572 U.S. 650 [2014]......................................................................................27

*Vega v Hempstead Union Free School Dist.*,
801 F3d 72 [2d Cir 2015] ..........................................................................28, 29, 31

*Walker v Azar*,
480 F Supp 3d 417 [EDNY 2020]...............................................................30

*Windsor v United States*,
699 F3d 169 [2d Cir 2012], *affd*, 570 US 744 [2013]..................................35

*Zarda v Altitude Express, Inc.*,
883 F3d 100 [2d Cir 2018] ..........................................................................30

**Rules, Laws & Statutes:**

28 U.S.C. § 1291 ..........2

28 U.S.C. § 1331 ..........1

28 U.S.C. § 1367 ..........1, 39

28 U.S.C. § 4071 ..........33

42 U.S.C. §1983 ..........1, 3, 9

42 U.S.C. § 2000 ..........1, 28

Federal Rule 4 ..........2

Federal Rule 12 ..........1, 5, 10, 27

SCHRL §528-13 ..........39

## PRELIMINARY STATEMENT

This appeal arises from the Memorandum and Order of the Honorable Hector Gonzalez, United States District Judge, for the Eastern District of New York, dated April 9, 2025 which Granted Defendants' Motion to Dismiss pursuant to Federal Rule 12(b), in its entirety.

## JURISDICTIONAL STATEMENT

**A. District Court Jurisdiction**

The United States District Court had subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers federal-question jurisdiction. Plaintiff's claims arose under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §1983 for violations of their rights under the First Amendment and Fourteenth Amendment to the United States Constitution, presenting substantial federal questions on the face of the complaint. The District Court similarly supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a) because those claims are so related to the claims in this action within such original jurisdiction that the form part of the same case or controversy under Article III of the U.S. Constitution.

**B. Court of Appeals Jurisdiction**

The United States Court of Appeals for the Second Circuit has jurisdiction under

28 U.S.C. § 1291, which authorizes appeals from all final decisions of the district courts. This appeal arises from a final order dismissing the complaint in its entirety.

**C. Timeliness of Appeal**

The district court entered final judgment dismissing the action on April 9, 2025. Plaintiff filed a notice of appeal on May 7, 2025, within the 30-day period prescribed by Federal Rule of Appellate Procedure 4(a)(1)(A). The appeal is therefore timely.

**D. Finality of Order**

This appeal is taken from a final judgment dismissing all federal claims against all defendants pursuant to Federal Rule of Civil Procedure 12(b)(6) and declining to exercise supplemental jurisdiction over the state law claims. Jurisdiction is proper under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

A. Whether the district court erred in granting qualified immunity to defendants on the Viewpoint Discrimination claim concluding that Plaintiffs' rights were not clearly established.

B. Whether the district court erred in dismissing, and without addressing, plaintiffs' facial challenge to the District's policies under the First Amendment's prohibition on viewpoint discrimination.

C. Whether the District Court erred in applying the *McDonnell Douglas* burden-shifting framework at the pleading stage in dismissing the claims discrimination claims under Title VII and Title IX, and finding that plaintiffs failed to show adverse employment action.

D. Whether the district court erred in dismissing the Equal Protection claim concluding that (1) that they were duplicative of the First Amendment claims; and (2) that plaintiffs failed to show that Defendants either acted with malice or *because o*f Plaintiffs' LGBT status.

E. Whether the Court erred in dismissing the *Monell* claims concluding that plaintiffs did not plead an underlying §1983 violation.

F. Whether the Court erred in declining to exercise supplemental jurisdiction over the state law claims

G. Whether the Court erred in denying Plaintiffs an opportunity replead the complaint.

## STATEMENT OF THE CASE

### A. Concise Statement of the Case

Plaintiff Sarah Ecke, a high school teacher at Connetquot Central School District, as Gay Student Alliance ("GSA") club advisor, together fellow teachers Christopher Dolce and Shinaide McAleavey-Polley commenced this action against defendants Connetquot Central School District, the Board of Education and members of the Board, the Superintendent of Schools, and the principal of the high school for, *inter alia*, for viewpoint discrimination under the First Amendment, denial of Equal Protection rights under the Fourteenth Amendment, violation of their rights under Title VII, and violations of their state law rights under the New York State Human Rights Law and Suffolk County Human Rights law.

Throughout their employment at the school, plaintiffs Ecke, Dolce and McAleavey-Polley were not only permitted, but also encouraged by the school to

decorate their classrooms as they deemed fit. (*See Appendix ("A.") 34, Amended Complaint ["Am. Compl."] ¶¶103-104)*.

Throughout the six-year period of time that Ecke was employed, the District permitted the display of the LGBT Pride flag in her classroom, which also serves as the designated meeting place for the school's Gender Sexual Alliance Club ("GSA"), a protected space based on the Equal Access Act. *(A. 27, Am. Compl. ¶61)*. Ecke is the GSA Club advisor. *(A. 24, Am. Compl. ¶31)*. Similarly, for more than year, the District permitted the display of the Pride Progress flag in her classroom (emphasizing marginalized members of the LGBT community, such as those who are disabled, or in racial minority groups) and the display of LGBT Pride flag stickers in Dolce's and McAleavey's classrooms. *(A. 34, Am. Compl. ¶¶103-104)*.

In 2022, plaintiffs were told to remove the flags. (*A. 27, Am. Compl. ¶62*). In response to their complaints of discrimination, the principal of the high school circulated an email to all district employees notifying staff of the new policy banning the display of non-USA flags which was implemented specifically and expressly because of plaintiffs' pride flags. *(A. 27,29, Am. Compl. ¶¶62,74).* The ban was created directly as a result of plaintiffs' flags and stickers (A. 29, 30, 32, Am. Compl. ¶¶73-75, 93). Further, defendants banned plaintiffs from displaying

items such as stickers (which are not flags even though they depicted LGBT flags) under that same flag-ban policy. (*A. 32, 33 Am. Compl.* ¶¶*93-95*.)

Thereafter, defendants enforced that ban only as against plaintiffs, and no other staff, permitting, by way of example, the display of sports flags, and a neo-Nazi Confederate flag, and a Blue Lives Matter Flag in classrooms. *(A. 35, Am. Compl.* ¶*106)*. The ban was ratified by the Connetquot Board of Education. *(A. 33, Am. Compl.* ¶*94)*.

**B. Procedural History**

This action was commenced by summons and complaint in the New York Supreme Court, Count of Suffolk on January 23, 2024, Index No. 601993/2024 (the "State Court Action"). On January 29, 2024, Defendants filed a Notice of Removal. *(A. 5, ECF No. 1)*. On January 30, 2024, Defendants filed a Notice of Removal in the State Court Action. On February 8, 2024, the district court, by text order of the Hon. Hector Gonzalez, ordered that the case was properly removed. On April 1, 2024, Plaintiffs amended the complaint as of right. *(A. 19, ECF No. 14)*. On April 25, 2024, defendants filed a pre-motion letter seeking leave to file a motion to dismiss pursuant to Federal Rule 12(b)(6). *(A. 8, ECF No. 15)*. On June 3, 2024, Defendants filed their pre-answer motion to dismiss pursuant Rule 12(b)(6). *(A. 91-118, ECF Nos. 24-26)*. On July 3, 2024, Plaintiffs filed their

opposition to the motion. *(A. 152, ECF No. 41)*. On July 17, 2025, Defendants filed their reply to the motion. *(A. 183, ECF No. 42)*. The parties proceeded with full discovery during the pendency of the motion.

On April 9, 2025, the district court granted Defendants' Motion to Dismiss the Federal Claims and declined to exercise supplemental jurisdiction over the state law claims. *(A. 199, ECF No. 70)*. On April 10, 2025, the Clerk entered judgment. *(A. 17, ECF No. 71)*. On May 7, 2025, Plaintiffs filed a Notice of Appeal from the order. *(A. 230, ECF No. 72)*.

**C. Rulings for Review**

The District court dismissed each of plaintiffs' federal claims, and declined to exercise supplemental jurisdiction over the state law claims. The rulings for review are as follows:

1. The district court's grant of qualified immunity. (A. 220-221).

2. The district court's dismissal of plaintiffs' claims for First Amendment Viewpoint discrimination. *(A. 221)*

3. The district court's dismissal of, without addressing, Plaintiffs' First Amendment facial challenge. *(A. 215)*

4. The district court's dismissal of Plaintiffs' claims for discrimination under Title VII and Title IX. *(A. 212)*

5. The district court's dismissal of Plaintiffs' claims for violation of their Equal Protection rights. *(A. 215)*

6. The district court's dismissal of Plaintiffs' claims against the municipal defendants under *Monell*. *(A. 226)*

7. The district court's decision declining to exercise supplemental jurisdiction over claims over the pendant state law claims under the NYS Human Rights Law and the Suffolk County Human Rights Law. *(A. 228)*

8. The district court's denial Plaintiffs the ability to replead the complaint. *(A. 229)*

## SUMMARY OF THE ARGUMENT

This Court should respectfully reverse the court's dismissal of the federal claims. Each cause of action in the Amended Complaint was adequately pled, meeting the test of plausibility as to each claim. Plaintiffs, members of the LGBT community, plausibility alleged Viewpoint Discrimination by alleging that Defendants improperly banned them from displaying the LGBT rainbow flag and LGBT stickers in their high school classrooms, one of which serves as the GSA club room under the school's ban on "political" expression. Defendants thereafter enforced their ban on political expression only as against Plaintiffs and not against other teachers.

In dismissing the claim on grounds of qualified immunity, the district court erred by ignoring decades of US Supreme Court that clearly established Plaintiffs' rights to be free from Viewpoint Discrimination, as established, *inter alia*, under *Tinker*, *Rosenberg*, and *Lamb's Chappel*. The district's court's reliance on

*Garcetti* and Lee-Walker in dismissing the viewpoint discrimination claims was improper as those cases did not concern viewpoint discrimination and instead concerned First Amendment Retaliation, which requires a showing that the speech is constitutionally protected, whereas viewpoint discrimination concerns how government regulates speech, including whether it favors or permits for expression of some ideas while also suppressing disfavored speech.

The district court erred in dismissing, without any explanation, Plaintiffs' facial challenge to Defendants' ban on their symbolic displays which was plausibly alleged. Defendants based the ban on their policy against "political" speech, which the defendants broadened to include a ban on all flags, and which defendants broadened further to ban stickers of flags. These bans were thus facially invalid, allowed for arbitrary application and unfettered discretion to defendants to determine what is political or what flags or stickers are favored and disfavored. Similarly, the flags and stickers had been displayed for years without incident, and with the school's permission. The ban constituted a prior restraint on Plaintiffs' speech.

The district court erred in dismissing the discrimination claims under Title VII and Title IX, improperly applying the burden shifting framework in *McDonnell Douglas* which is an evidentiary standard (not pleading standard) reserved for summary judgment and not a motion to dismiss. The district court

also erred in concluding that the facts do not rise to the level of adverse employment action even though Plaintiffs demonstrated that they were "treated worse" than other teachers based on their sexual identities and status as LGBT members and even though they were not required, as a matter of law, to show "significant" harm.

Plaintiffs plausibly pled denial of their Equal Protection rights based on the Defendants' discrimination against Plaintiffs because of their sexual identities and LGBT member status. Thus, the claim was not duplicative of the First Amendment claims. Defendants selectively enforced the ban against them and not others. Defendants created an entirely new policy prohibiting display of pride flags, then used that policy to prohibit the display of stickers. Defendants then opted to enforce the ban only as against plaintiffs and not other teachers who violated the flag ban. Plaintiffs, as members of a protected class entitled to the same rights and privileges as do members of all races, religions, and ethnicities.

The district court erred in dismissing the *Monell* claims because Plaintiffs proved underlying §1983 violations that were proximately caused by the District's unlawful policies and practices.

The district court erred in declining to exercise supplemental jurisdiction over the state law claims because the Federal Claims are viable and further, the

state law claims were neither complex, nor novel and subject to the court's jurisdiction.

Lastly, to the extent that any amplification of the pleadings was required, the district court erred in not granting Plaintiffs leave to replead.

## ARGUMENT

### STANDARD OF REVIEW

The standard of review from the grant of a motion to dismiss pursuant to Federal Rule 12(b)(6) is *de novo*, accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff. *Buon v Spindler*, 65 F4th 64, 76 [2d Cir 2023]. To survive dismissal, the pleadings need only contain enough facts to state a claim to relief that is plausible on its face, i.e., the pleaded facts must allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*.

Factual disputes are "inappropriate for resolution on a motion to dismiss." *Fin. Guar. Ins. Co. v. Putnam Advisory Co*., LLC, 783 F.3d 395, 405 (2d Cir. 2015). The choice between two plausible inferences drawn from factual allegations is for the factfinder, not the Court. *Anderson News, LLC v. Am. Media, Inc*., 680 F.3d 162, 185 (2d Cir. 2012). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a

recovery is very remote and unlikely." *Bell Atl. Corp. v Twombly,* 550 US 544, 556 [2007].

## POINT I

## PLAINTIFFS PLAUSIBLY ALLEGED VIOLATION OF THEIR CLEARLY-ESTABLISHED RIGHTS AGAINST VIEWPOINT DISCRIMINATION

It is clearly-established law that public school teachers do not shed constitutional rights to freedom of speech or expression at the schoolhouse gate. *Tinker v. Des Moines School District,* 393 U.S. 503, 506, (1969) (school district engaged in viewpoint discrimination in creating a policy banning junior high school students from wearing black armbands); *James v. Board of Educ.,* 461 F.2d 566 (2d Cir. 1972) (school district engaged in viewpoint discrimination in banning high school teacher from wearing a black armband in protest of Vietnam War under its policy against political speech).

Viewpoint discrimination is a "subset or particular instance of the more general phenomenon of content discrimination," in which "the government targets not subject matter but particular views taken by speakers on a subject," *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 829, 831, 115 S.Ct. 2510, 132 L.Ed.2d 700 [1995]. *See also Reed v Town of Gilbert, Ariz.*, 576 US 155, 168-69 [2015]. Thus, restrictions on speech in a limited public forum must be viewpoint-neutral and may not "serve as a facade for viewpoint

discrimination." *Amidon v Student Ass'n of State Univ. of New York at Albany*, 508 F3d 94, 100 [2d Cir 2007].

"*Tinker* involved political viewpoint-based discrimination and established a 'material and substantial interference' test that permits schools to restrict student speech only where …'necessary to avoid material and substantial interference with schoolwork or discipline.'" *Guiles ex rel. Guiles v Marineau*, 461 F3d 320, 326 [2d Cir 2006] (quoting *Tinker* at 511). In *Tinker*, the school district adopted a policy banning its junior high students, 13-year olds, from wearing armbands to protest the Vietnam despite permitting other students to wear buttons relating to national political campaigns, and the Iron Cross (traditionally a symbol of Nazism). The school district sought to justify the ban by arguing that the feared the armbands would create a disturbance, despite the silent, passive expression of opinion, unaccompanied by any disorder or disturbance on the part of the students. *Id*. at 508-510 (noting absence of any "interference, actual or nascent, with the schools' work or of collision with the rights of other students to be secure and to be let alone" and thus concluding that the case did "not concern speech or action that intrudes upon the work of the schools or the rights of other students").

The Supreme Court rejected the school's defense, stating that fear of potential disturbance is not enough to suppress free expression and further, that the school acted out of a desire to suppress controversy, not because of actual or

anticipated disruption. *Id*. (The school selectively prohibited only the black armbands symbolizing Vietnam protest, while allowing other political symbols). Thus, the Court held that school could not rot regulate speech absent "substantial disruption of or material interference with school activities." *Id*. at 513.

Under *Tinker*, regulation of student speech is permissible only when the speech would substantially "substantially disrupt or interfere with the work of the school or the rights of other students". *Saxe v State Coll. Area School Dist.*, 240 F3d 200, 211 [3d Cir 2001] *cited in Marineau*, 461 F3d at 327.

Thus, *Tinker* requires a specific and significant fear of disruption, not just some remote apprehension of disturbance. *Id*. The Second Circuit applied the principles in *Tinker* to teachers in *James*, 461 F2d 566, 568 [2d Cir 1972], wherein a high school teacher was disciplined under the school's policy against expressing political opinions by wearing an armband in protest of the Vietnam war. The Second Circuit determined that the Board acted "arbitrarily and unjustifiably" given the "benign and noncoercive manner of expression" of an 11th grade English teacher (where students are approximately 16 or 17 years old) who did no more than wear a black armband in class in symbolic protest against the Vietnam War, was not proselytizing, did not disrupt classroom activities, did not interfere with his teaching, did not have any influence on any students, and did not engender protest from any student, teacher or parent. *Id*. at 574.

It is clearly-established law that boards of education are prohibited from censoring expression that it disagrees with:

> The dangers of unrestrained discretion are readily apparent. Under the guise of beneficent concern for the welfare of school children, school authorities, albeit unwittingly, might permit prejudices of the community to prevail. It is in such a situation that the will of the transient majority can prove devastating to freedom of expression. Indeed, James has alleged in his complaint that another teacher, "without incurring any disciplinary sanction, prominently displayed the slogan 'Peace with Honor' on a bulletin board in his classroom." This slogan has been associated with our foreign policy. If the allegation is true, and we must assume that it is in light of the summary dismissal of the complaint, it exemplifies the concern we have expressed. The Board's actions under such circumstances would indicate that its regulation against political activity in the classroom may be no more than the fulcrum to censor only that expression with which it disagrees. *See Tinker v. Des Moines Independent Community School District*, 393 U.S. at 510-511, 89 S.Ct. 733, 21 L.Ed.2d 731 (petitioners were barred from wearing black armbands, but other students were allowed to wear political campaign buttons and the Iron Cross, a traditional symbol of Nazism). By requiring the Board of Education to justify its actions when there is a colorable claim of deprivation of first amendment rights, we establish a prophylactic procedure that automatically tempers abuse of properly vested discretion.

*James,* 461 U.S. at 575 (internal quotations and citations omitted) ("federal courts…cannot allow unfettered discretion to violate fundamental constitutional rights").

In *Hazelwood School Dist. v. Kuhlmeier*, the Supreme Court clarified that, in instances where speech or expression were *school sponsored*, the school could

regulate same provided it could show their actions were "reasonably related to legitimate pedagogical concern." 484 U.S. 260, 272-73 (concluding that "the standard articulated in *Tinker* for determining when a school may punish student expression need not also be the standard for determining *when a school may refuse to lend its name and resources to the dissemination of student expression*"). *Id*. (emphasis added). In doing so, it held that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id*.

The Second Circuit has distilled the holdings of *Tinker* and *Hazelwood* as follows:

> (1) schools have wide discretion to prohibit speech that is less than obscene—to wit, vulgar, lewd, indecent or plainly offensive speech, *Fraser,* 478 U.S. at 683–85[[1]]; *Hazelwood,* 484 U.S. at 272 n. 4, 108 S.Ct. 562;
> (2) if the speech at issue is "school-sponsored," educators may censor student speech so long as the censorship is "reasonably related to legitimate pedagogical concerns," *Hazelwood,* 484 U.S. at 273, 108 S.Ct. 562; and
> (3) for all other speech, meaning speech that is neither vulgar, lewd, indecent or plainly offensive under *Fraser,* nor school-sponsored under *Hazelwood,* the rule of *Tinker* applies. Schools may not regulate such student speech unless it would materially and substantially disrupt classwork and discipline in the school. *See Tinker,* 393 U.S. at 513, 89 S.Ct. 733.

[1] 478 US 675 [1986]

*Marineau*, 461 F3d at 325.

Thus, the contours of speech regulation hinge on whether the speech is school sponsored. If so, then the *Hazelwood* standard applies, shifting the burden to the school to prove that the censorship reasonably relates to a legitimate pedagogical concern. *Id. (*citing *Hazelwood,* 484 U.S. at 273–74).

If, on the other hand, the speech was not school sponsored and thus constituted personal expression that happened to occur on the school premises, then the standard is supplied by *Tinker*, under which school officials may regulate *only if* that speech would "materially and substantially disrupt classwork and discipline in the school." *Tinker*, 393 U.S. at 513; *Marineau*, 461 F.3d at 325.

Viewpoint discrimination concerns the manner in which the speech is regulated. *See, e.g., Rosenberger v Rector and Visitors of Univ. of Virginia*, 515 US 819, 828 [1995]. "The principle that has emerged from our cases 'is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.'" *Lamb's Chapel v Ctr. Moriches Union Free School Dis*t., 508 US 384, 389 [1993] (internal quotations omitted). *See also Matal v Tam*, 582 US 218 [2017] (reinforcing the principle that government may not suppress speech based on disapproval of its message and that viewpoint discrimination is "presumptively unconstitutional").

The prohibition against viewpoint discrimination in education was made clear in *Rosenberger*, which held that where government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. 515 US at 828. As the Court explained:

> It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. ... Other principles follow from this precept. In the realm of private speech or expression, government regulation may not favor one speaker over another. ... Discrimination against speech because of its message is presumed to be unconstitutional. …. When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant. …Viewpoint discrimination is thus an egregious form of content discrimination. The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.
>
> Once it has opened a limited forum, however, the State must respect the lawful boundaries it has itself set. The State may not exclude speech where its distinction is not "reasonable in light of the purpose served by the forum," …. Thus, in determining whether the State is acting to preserve the limits of the forum it has created so that the exclusion of a class of speech is legitimate, *we have observed a distinction between, on the one hand, content discrimination, which may be permissible if it preserves the purposes of that limited forum, and, on the other hand, viewpoint discrimination, which is presumed impermissible when directed against speech otherwise within the forum's limitation*s.

*Rosenberger*, 515 US at 828-30 (emphasis added). *See also Reed v Town of Gilbert, Ariz.*, 576 US 155 [2015] (articulating government restrictions which prohibit government from favoring certain speech [which is an "egregious form of content discrimination] and prohibiting public discussion of an entire topic).

### *A. The Ban was Discriminatory As-Applied to Plaintiffs*

Because the speech here constituted Plaintiffs' personal expression and was not school sponsored even though it happened to occur on the school premises, the *Tinker* standard applied. Applying *Tinker*, Plaintiffs plausibly alleged their claims for viewpoint discrimination because their speech did not "materially and substantially disrupt classwork and discipline in the school." 393 U.S. at 513. *See Marineau*, 461 F3d 320, 327 [2d Cir 2006] ("*Hazelwood,* … comes into play only when the student speech is "school-sponsored" or when a reasonable observer would believe it to be so sponsored, *see id.* at 273–74 …; *Peck,* 426 F.3d at 628–29; *Saxe,* 240 F.3d at 213–14 [noting that "*Hazelwood's* permissive 'legitimate pedagogical concern' test governs only when a student's *school-sponsored* speech could reasonably be viewed as speech of the school itself"]) (emphasis in original).

Plaintiffs' flags and stickers were neither school sponsored, nor would anyone reasonably view them as speech of the school. They had been on display for years without incident. By policy, practice, and/or custom, Defendants created a forum for teachers to express personal, non-curriculum-related messages, thereby intentionally opening a forum for indiscriminate expressive use by the teachers. Pursuant to this policy, the teachers have discretion over the messages conveyed by their classroom displays so long as the displays do not materially and substantially disrupt the work and discipline of the school. Moreover, those items were

purchased by plaintiffs with their own money, and were their speech and not the speech of the School District. Students, teachers, administrators, and board members were aware of the policy to allow teachers freedom to express personal messages in their classrooms by posting materials on the classroom walls, and students, teachers, and administrators were aware that Plaintiffs displayed flags and stickers pursuant to this policy. Thus, no one would reasonably perceive that these displays as represented anything other than Plaintiffs' speech. Indeed, Plaintiffs are known members of the LGBT community and further, Plaintiff Ecke, a math teacher, serves as the GSA Club Advisor.

Defendants discriminated against Plaintiffs in applying the ban on "political" speech to ban the pride flags and stickers. Further, as a direct result of Plaintiffs' flags and stickers, Defendants created a ban on all flags (other than the American flag and curriculum-related flags) and applied that ban not just to Plaintiffs' flags but also their stickers.

That ban, however, was not enforced equally as against all teachers, thus amounting to viewpoint discrimination. For example, the District selectively censored LGBTQ expression while allowing other non-LGBTQ symbolic displays to remain untouched, including New York Rangers flags, Blue Lives Matter imagery, and religious symbols in classrooms. Plaintiffs have emails between one teacher and Defendant Reza Kolahifar clearly evidencing the District's

discrimination and selective enforcement of the ban. On October 11, 2022, after Defendant Kolahifar emailed the teachers about the new flag ban policy, Robert Burger, an 8th grade social studies teacher, asked Kolahifar: "*In response to your most recent email, I am asking if I must take down my sports flags that are in my classroom. Please advise*." Defendant Reza Kolahifar immediately wrote back, "*Hi Rob, If flags are not being used for education purposes, they are to be removed. That said, I highly doubt Joe Piombo would come in and ask you to remove it.*"

Application of the foregoing principles of law can be seen in a case with analogous facts. *See Johnson v Poway Unified School Dist*., 07 CV 783 BEN (LSP), 2008 WL 5657801, at *5-7 [SD Cal Sept. 4, 2008] (affirming the right of a teacher to display a banner that neither substantially disrupts classroom studies, nor advocates illegal drug use, nor incites imminent lawless action).

In *Johnson*, plaintiff was a high school math teacher who, for 25 years, used the same classroom for his teaching duties and extra-curricular activities. *Id*. at *2. The plaintiff in *Johnson*, like plaintiffs here: (i) continuously hung one or two banners on the wall of his assigned classroom; (ii) Johnson purchased and displayed the banners using his own money; (iii) throughout the 25 years that the banners hung on the wall of Johnson's assigned classroom, there were no objections to the presence or messages of the banners; (iv) each banner was

approximately seven feet long and two feet wide, without pictures or symbols, and colored red, white, and blue with famous phrases; (v) were not hung pursuant to his official duties as a math teacher; and (vi) did no not use the banners during any classroom sessions or periods of instruction; rather, Johnson hung his banners pursuant to a long-standing Poway Unified School District policy, practice, and custom of permitting teachers to display personal messages on their classroom walls. *Johnson*, 2008 WL 5657801, at *2-3 (internal citations omitted).

The facts here are almost identical to those in *Johnson*, except that Plaintiffs' flags had rainbow colors and no words, and worse yet, Defendants were selective in their enforcement of the ban, favoring other forms of expression. "The principle that has emerged from our cases 'is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.''" *Lamb's Chapel*, 508 US at 389 (internal quotations omitted) "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. *Id.* "In the realm of private speech or expression, government regulation may not favor one speaker over another." *Id.* *"*Discrimination against speech because of its message is presumed to be unconstitutional." *Id.* The flag ban was neither viewpoint neutral nor equally applied to all educators. Further, once the Defendants opened the door to LGBT

expression (the pride and progress flags), it was prohibited from limiting expression it disagreed with (the progress flag).

The court in *Johnson*, in upholding the Plaintiff's right to display the banners, relied on the free speech principles articulated in *Tinker*. *2008 WL 5657801* at *4. Here, like in *Johnson*, the Connetquot SD "squelched" Plaintiffs' speech. The court in *Johnson* further stated that, even if the permissible restrictions on student speech could justify restrictions on educator speech, none of the problematic situations calling for speech regulation existed in Johnson's classroom setting. *Id*. Here, like in *Johnson*, the Pride and Progress Flags and stickers neither substantially disrupted classroom studies, nor advocated illegal drug use, nor incited imminent lawless action. *Id*.

The court in *Johnson* further recognized that the plaintiff "did not hang the banners pursuant to his official duties as a math teacher" given that he, like plaintiffs here, did not use the banners during any classroom sessions or periods of instruction, but rather hung his banners pursuant to a long-standing School District policy, practice, and custom of permitting teachers to display personal messages on their classroom walls. Thus, because the banners and stickers were not "school sponsored," and because they were not vulgar, lewd, obscene or plainly offensive speech, the test under *Hazelwood* is not triggered and the "substantial disruption test" under *Tinker* is the applicable standard.

Even assuming, *arguendo*, application of the *Hazelwood* standard (which would be improper because the speech was not school sponsored nor did it bear the to bear the imprimatur of the school), Plaintiffs nonetheless adequately pled their claims because Defendants' defense that their actions were "reasonably related to legitimate pedagogical concerns" are belied by the fact that they permitted the flags and stickers for years without incident. Further, this is an affirmative defense to be proven by a preponderance of the evidence and not on a motion to dismiss, particularly where, as here, Plaintiffs have raised doubt as to the validity and strength of those purported concerns versus being the personal concerns of a board member. Indeed, in *Peck ex rel. Peck v Baldwinsville Cent. School Dist.*, 426 F3d 617, 633 [2d Cir 2005], the Second Circuit held that, in considering viewpoint neutrality, the burden is on the school district to prove "a state interest so overriding as to justify, under the First Amendment, The District's potentially viewpoint discriminatory censorship."

The *Hazelwood* Court recognized that "a school must be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics." *Hazelwood*, 484 U.S. at 272. In the case here, the flags and stickers, purchased by Plaintiffs, were continuously present for years in high school classrooms (where students are older than the junior high students in *Tinker*), one of which is used by plaintiff Ecke for

math class which also serves as the GSA club advisor, without incident. Plaintiffs are open members of the LGBT community who used these displays for their own expression and not for any classroom instruction, pursuant to a long-standing Connetquot Central School District policy, practice, and custom of permitting teachers to display personal messages on their classroom walls.

Moreover, this Court has held that, "a manifestly viewpoint discriminatory restriction on school-sponsored speech is, prima facie, unconstitutional, *even if* reasonably related to legitimate pedagogical interests." *Peck*, 426 F3d at 633.

Further, Defendants admitted that they prohibited the display of LGBTQ symbols, and only disputed the merits of the claim, arguing only that the flag ban was equally applied to all, which is improper on a motion to dismiss. *T.S. Haulers, Inc. v Town of Riverhead*, 190 F Supp 2d 455, 464 [EDNY 2002] (stating that defendants' arguments on the merits of a claim were not proper in a 12(b)(6) motion to dismiss).

Accordingly, dismissal was error.

### ***B. The Ban was Facially Discriminatory and Constituted a Prior Restraint on Free Speech***

The ban on the flags and stickers constituted a prior restraint on Plaintiffs' free speech. Prior restraints on speech are "the most serious and the least tolerable infringement on First Amendment rights." *M.B. ex rel. Martin v Liverpool Cent. School Dist.*, 487 F Supp 2d 117, 143-45 [NDNY 2007]; *New York Times Co. v.*

*U.S.*, 403 U.S. 713 (1971). "Generally, there is a 'heavy presumption' against the validity of a prior restraint." *Id*. Because the District had already permitted the display, it had no legal basis to retract this right.

Further, a "government regulation that allows arbitrary application is inherently inconsistent with a valid time, place, and manner regulation because such discretion has the potential for becoming a means of suppressing a particular point of view." *Id. at* 143-45. The District's assertion that no Viewpoint Discrimination occurred because the ban applied to all flags except for the American flag and "curriculum-related flags" only highlight the selective nature and arbitrariness of the ban. The District lacked guidelines or definitions interpreting what is "political expression" or "curriculum-related" thus failing to pass constitutional muster. Moreover, the lack of guidelines allowed the District to apply the ban arbitrarily and in a manner that would permit for expression of some ideas and suppression of others that the District disagreed with. As such, there was in nothing in the policy against "political" speech that "which would prevent District officials from exercising their virtually unfettered discretion to suppress disfavored speech or disliked speakers." *Id*. That is precisely the case here. Accordingly, dismissal was error.

### *C. Grant of Qualified Immunity was Reversible Error*

Despite the clearly-established law concerning viewpoint discrimination in education, the district court below nonetheless determined that such rights were not clearly established, conflating Plaintiffs' rights to be from viewpoint discrimination with its rights against First Amendment Retaliation, erroneously basing its decision on *Garcetti v. Ceballos*, 547 U.S. 410 (2006), *Lee-Walker* v. *New York City Dept. of Educ.*, 712 Fed. Appx. 43, 44 (2d Cir. 2017), and *Byrd v Middletown Bd. of Educ.*, 3:24-CV-207 (VAB), 2024 WL 4871885, *1, *4 [D Conn Nov. 22, 2024] (teacher claimed school violated the First Amendment by firing her in response to speech she "made about a legitimate controversial topic" while teaching the District curriculum), all of which concerned First Amendment Retaliation and not Viewpoint Discrimination, which, unlike retaliation claims, does not require plaintiffs to make a *prima facie* showing that they were engaged in protected activity.[2] *See Garcetti*, 547 U.S. 410 (finding that, in the context of retaliation claims based on employee discipline, threshold question was whether the speech was protected and determining that the answer

---

[2] Notably, defendants' qualified immunity argument in their motion to dismiss was vague and conclusory. Defendants failed to identify the specific claims that purportedly entitled them to qualified immunity, and moreover, failed to identify the law that they deemed not clearly established. Defendants merely argued that "Plaintiffs cannot show the rights they invoke against the individual Defendants were clearly established"). (A. 150). The district court, in turn, erroneously granted qualified immunity to all defendants and on all claims.

depended on whether the person was speaking pursuant to official duties or as a citizen).

Qualified immunity protects government officials only where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The standard does not demand a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Importantly, the qualified immunity analysis is often fact intensive. The Supreme Court has repeatedly admonished lower courts not to resolve immunity defenses on the pleadings where factual development is needed. *See Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (*per curiam*).

Further, grant of qualified immunity, which is an affirmative defense, on a 12(b)(6) motion is improper where the defense does not appear on the face of the complaint. *McKenna v Wright*, 386 F3d 432, 436 [2d Cir 2004] *Hyman v Abrams*, 630 Fed Appx 40, 42 [2d Cir 2015] ("Consequently, 'a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept [that] ... the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.'") (quoting *McKenna* at 436).

Regardless, the prohibition against viewpoint discrimination by government, including in the context of education, is clearly established and not, in any way, limited by *Garcetti*, which concerns First Amendment retaliation (and which requires a threshold finding that speech is protected).

## **POINT II**

## **THE DISTRICT COURT ERRED IN DISMISSING THE DISCRIMINATION CLAIMS UNDER TITLE VII AND TITLE IX**

Pursuant to Title VII. 42 USC §2000e-2(a)(1). it is "an unlawful employment practice…for an employer to discriminate against any individual with respect to…terms, conditions, or privileges of employment, because of such individual's …sex."). To prove the claim, all that is required of Plaintiffs is to plead facts that provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Vega v Hempstead Union Free School Dist*., 801 F3d 72, 85, n.7 [2d Cir 2015]). Thus, the burden shifting framework set forth in *McDonnell Douglas* is applied only on a summary judgment and not on a motion to dismiss. *Id*.

Here, in dismissing Plaintiffs' Title VII and IX claims, the district court erred in applying the *McDonnell Douglas* framework, which is the wrong pleading standard. As the Second Circuit made clear:

> More importantly, our decision in *Littlejohn* makes clear that a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas,* at least as the test was originally formulated, to defeat a motion to dismiss. Rather, because "a temporary 'presumption' of discriminatory motivation" is created under the first prong of the *McDonnell Douglas* analysis, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Id.* at 306, 311, *4, 8 (referring "to the reduced requirements that arise under *McDonnell Douglas* in the initial phase of a Title VII litigation").[7]
>
> Accordingly, here, the district court erred when it granted Defendants' motion for judgment on the pleadings on the grounds that Vega had "not established a prima facie case of discrimination." *Vega,* 2014 WL 2157536, at *6. At the pleadings stage of the litigation, Vega was not required to plead a *prima facie* case of discrimination as contemplated by the *McDonnell Douglas* framework. *See Littlejohn,* 795 F.3d at 311, 2015 WL 4604250, at *8 (referring to "the reduced prima facie requirements that arise under *McDonnell Douglas* in the initial phase of a litigation"). We hold that the district court held Vega to the wrong pleading standards.

*Id. at* 84.

"[A]t the pleadings stage of an employment discrimination case, a plaintiff has a "*minimal* burden" of alleging facts "suggesting an inference of discriminatory motivation." *Id*. (quoting *Littlejohn*, 795 F.3d at 310, 2015 WL 4604250, at *7)(emphasis in original) ("We ruled nonetheless that the facts alleged in the complaint must provide "at least minimal support for the proposition that the employer was motivated by discriminatory intent"").

"[F]or a discrimination claim [under Title VII] to survive a motion to dismiss, absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff (1) is a member of a protected class, (2) was qualified, (3) suffered an adverse employment action, and (4) has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Back v Hapoalim*, 24-1064-CV, 2024 WL 4746263, at *1 [2d Cir Nov. 12, 2024] quoting *Buon v. Spindler*, 65 F.4th 64, 79 (2d Cir. 2023) (alterations adopted) (internal quotation marks and citation omitted).

Employers are prohibited from discriminating against employees on the basis of homosexuality or transgender status. *Bostock v Clayton County, Georgia*, 590 US 644, 680 [2020]; *Zarda v Altitude Express, Inc*., 883 F3d 100, 132 [2d Cir 2018], *affd sub nom.* 590 US 644 [2020] (Title VII's prohibition extends to all discrimination because of sex and sexual orientation discrimination and is an actionable subset of sex discrimination); *Walker v Azar*, 480 F Supp 3d 417, 424 n.4 [EDNY 2020]; *Crews v City of Ithaca*, 3:17-CV-213 (MAD/ML), 2021 WL 257120 [NDNY Jan. 26, 2021], *affd,* 21-217-CV, 2022 WL 1493762 [2d Cir May 12, 2022].

Plaintiffs adequately pled violation of their rights under Titles VII and IX in alleging that they were members of the LGBT community who were discriminated

against by Defendants because of their sex. Plaintiffs alleged that the defendants discriminated against them by: (i) mandating removal of the Pride Flag and stickers; (ii) mandating the removal of the flags and stickers based on a policy against "political" expression; (iii) implementing a no-flag policy in response to the display of the Pride Flag; (iv) selectively enforcing its flag policy as against only pride expression and not other forms of speech, including speech that was actually political such as the Blue Lives Matter banner and neo-Nazi confederate flag;[3] (v) being deliberately indifferent to the vandalism of the pride stickers, and (vi) placing burdens on plaintiff Ecke that were not placed on other teaches who sent permission slips out.

As to the second element, an action is "because of" a plaintiff's sex where it was a "substantial" or "motivating" factor contributing to the employer's decision to take the action. *Vega*, 801 F3d at 85 (stating that plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that sex was *a motivating factor* for any employment practice). Here, Defendants conceded that their conduct was "because of" Plaintiffs' sex, arguing the "political" nature of LGBT issues and relying on "pedagogical" concerns to defend their actions.

---

[3] The District selectively removed plaintiffs' flags and stickers but refused to prohibit the display of a NY Rangers flag, a painting of a Blue Live Matters flag, a neo-Nazi/neo-confederate flag, and most notably, the painted MAGA letters.

As such, plaintiffs have adequately alleged discrimination because of their sex in violation of Title VII. In erroneously applying the test under *McDonnell Douglas*, the district court erred in concluding that Defendants' conduct did not rise to the level of adverse employment action. As the US Supreme Court has held, however, the employee need not show that the harm incurred was "significant" or otherwise exceeded some heightened bar. Muldrow v City of St. Louis, Missouri, 144 S Ct 967, 969 [2024] (rejecting any added requirement of plaintiff to show "significant" harm and requiring lower courts to apply the Title VII standard as proscribed by the statute). "Discriminate against" means treat worse, here based on sex. . . Neither that phrase nor any other establishes an elevated threshold of harm. *Id*. ("To demand 'significance' is to add words to the statute Congress enacted [which would] impose a new requirement on a Title VII claimant" not otherwise required under the statute as written). *Id*. Title IX expressly subject school districts to these laws.

The US Supreme Court in *Muldrow* held that the phrase "terms or conditions" covers more than "economic or tangible" injury and rejected that the harm incurred must be "significant" or "serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow v City of St. Louis, Misso*uri, 144 S Ct 967, 974 [2024]; *see also Bostock*, 590 US at 657-59 (The words "discriminate against," refer to

differences in treatment that injure employees , or otherwise said, the statute targets practices that treat a person worse because of sex or other protected trait). As the Court further held, to demand "significance" is to "impose a new requirement on a Title VII claimant" that not required under the statute. *Id*.

Further, Plaintiffs' rights to decorate their classrooms, including the GSA Club room, or escort high school students on a field trip by following standard protocols were stripped by Defendants, thereby "altering" their enjoyment of any benefits, privileges, terms, or conditions" of their employment. *Anderson v Amazon.com, Inc*., 23-CV-8347 (AS), 2024 WL 2801986, at *11 [SDNY May 31, 2024] (rejecting the need for *materially* adverse action, holding that *immaterial* actions are enough to state a claim so long as they alter the enjoyment of any benefits, privileges or terms or conditions of her employment). Regardless, prohibiting a GSA teacher from displaying symbols of her club, or impairing her ability to engage students on a field trip constitutes materially adverse action under Title VII.[4] Accordingly, dismissal was error.

[4] Additionally, this all started in the GSA's meeting room, where the Equal Access Act provides a "safe harbor" provision that requires schools to offer a "fair opportunity" to meet in several ways. 20 U.S.C. § 4071(c).

## POINT III

## THE EQUAL PROTECTION CLAIMS ARE NOT DUPLICATIVE OF THE FIRST AMENDMENT CLAIMS AND WERE ADEQUATELY PLED

In dismissing the Equal Protection claims, the district court below erred by concluding that they were duplicative of the First Amendment claims.

The Equal Protection Clause requires that the government treat all similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (classifications based on gender and sex call for a heightened standard of review). According to the Second Circuit Court of Appeals, there are several ways for a plaintiff to plead intentional discrimination that violates the Equal Protection Clause and those ways are as follows: (1) a plaintiff could point to a law or policy that expressly classifies persons on the basis of impermissible considerations; or (2) a plaintiff could identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner; or (3) a plaintiff could also allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus. *Savino v Town of Southeast*, 983 F Supp 2d 293, 301 [SDNY 2013], *affd,* 572 Fed Appx 15 [2d Cir 2014] *(*quoting *Pyke v. Cuomo,* 258, F.3d 107, 109 (2d Cir.2001) (quoting *Brown v. City of Oneonta,* 221 F.3d 329, 337 (2d Cir.1999)).

Additionally, a plaintiff may claim selective prosecution or selective enforcement of the law based upon his or her membership in a particular class,

compared with others similarly situated. *Id*. Finally, a plaintiff may seek to prove discrimination under the "class of one" analysis, asserting he or she was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment" without otherwise claiming membership in a particular class or group. *Id*. For selective enforcement claims, courts in this district apply a less stringent standard, requiring only that plaintiffs show that they are "roughly equivalent" to the proffered comparators. *Hu v City of New York*, 927 F3d 81, 90 [2d Cir 2019] citing *T.S. Haulers, Inc. v Town of Riverhead*, 190 F Supp 2d 455, 462-63 [EDNY 2002].

Here, Plaintiffs adequately alleged that Defendants' conduct was impermissibly based on Plaintiffs' LGBT status. *Windsor v United States*, 699 F3d 169, 181 [2d Cir 2012], *affd,* 570 US 744 [2013]; *Bostock*, 590 US at 798. Plaintiffs put forth the following theories of liability: (1) Policy 1310 was applied in an intentionally discriminatory manner; (2) Policy 1310 had an adverse effect and as motivated by discriminatory animus; and (3) Defendants selectively enforced policy 1310 as against Plaintiffs based on their sexual identity.

Plaintiffs adequately alleged that the Defendants violated their Equal Protection rights in numerous way. First, the School's District's Policy 1310 which prohibited political expression was applied in an intentionally discriminatory manner because defendants applied it to ban Plaintiffs' Pride flags

and stickers. Second, the policy was used with the sole purpose of targeting Plaintiffs' flags and stickers. Third, Defendants created a rule that all flags are banned as an extension of Policy 1310, and used that rule to selectively ban only Plaintiffs' flags and stickers and not the flags and stickers of other teachers, including those who hung Blue Lives Matter banners, neo-Nazi confederate flags, and sports teams flags. Defendants further placed burdens on plaintiff Ecke that were not placed on other teachers who sent permission slips out.

The district court erred by finding these claims duplicative of the First Amendment claims. *See, e.g., Liverpool Cent. School Dist.*, 487 at 147 (in claim based on violations of student speech rights, claim for selective enforcement may proceed where plaintiff can show comparators). The district court also erred in concluding that Plaintiffs failed to allege facts from which the Court could infer that Defendants acted with malice or acted *because of* Plaintiffs' LGBT status.

First, Plaintiffs were not required to prove that the District acted with malice, as even recognized by the case by the district court in dismissing the claim, *Lilakos v New York City*, 808 Fed Appx 4, 8 [2d Cir 2020](summary order). In *Lilakos*, this Court stated that, "[t]o proceed under a selective enforcement theory, Plaintiffs must plausibly allege that any selective treatment they experienced 'was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of

constitutional rights, **<u>or</u>** by a malicious or bad faith intent to injure [them]." (Emphasis added). The Court's use of the disjunctive establishes that malice or bad faith are not required elements. Further, the district court's reliance on the pretextual statements by Defendants to disprove bad faith was improper on a motion to dismiss.

Plaintiffs further adequately pled facts sufficient to establish that the Defendants' actions were impermissibly based and *because of* Plaintiffs' LGBT status. Plaintiffs alleged both that they were members of the LGBT community and that the banned flags and symbols were symbols of their identities. They further alleged that no other teachers were similarly told to take their non-pride flags down. Defendants do not dispute that the ban was based on these facts and instead argue that it was because of these facts that the ban was instituted, arguing "pedagogical concerns." Accordingly, dismissal was error.

## POINT IV

## THE DISTRICT IS LIABLE UNDER *MONELL*

Because Plaintiffs adequately pled violations of their rights under the First Amendment and Fourteenth Amendment, and that these violations were proximately caused by the District's unlawful policy on banning LGBT symbols, the district court erred in dismissing the Monell claims. The District is liable for

its adoption and implementation of the ban to specifically censor Plaintiffs' viewpoint on matters of public concern; enforcing the ban only as against plaintiffs; imposing the GSA Permission Slip Policy against Ecke and not others similarly situated; failing to adequately train District officers and employees about policies prohibiting harassment, discrimination on the basis of sex; failing to adequately supervise District officers and employees, including, but not limited to, Defendant Moran, in carrying out their duties; failing to adequately train District officers and employees as to the manner in which to investigate complaints of harassment, discrimination, retaliation on the basis of sex; refusing to enforce written policies equally; repeatedly failing to discipline and/or address students for discriminating and harassing behavior, thereby impliedly sanctioning this behavior and communicating that perpetrators would go unpunished; and remaining deliberately indifferent to the discrimination. These policies were adopted by the Principal, the Superintendent and the Board of Education, who are the final policymakers. Accordingly, dismissal was error.

## POINT V

## THE COURT BELOW ERRED IN DECLINING TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS

District courts may decline to exercise supplemental jurisdiction over a claim under subsection §1367(a) if

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c) (2006); *Shahriar v Smith & Wollensky Rest. Group, Inc.*, 659 F3d 234, 245 [2d Cir 2011].

The district court below identified §1367(c)(1) and (c)(3). The court erred in dismissing under (c)(1) on grounds that the parties disputed the court's jurisdiction over the claims under the Suffolk County Human Rights Law. The SCHRL is neither novel, complex, nor permits for jurisdictional disputes, as it expressly states that an aggrieved party "shall have a cause of action in any court of competent jurisdiction. *See* SCHRL §528-13(r).

As shown herein, because the Federal Claims should not have been dismissed, the district court should have retained jurisdiction over the state law claims. Accordingly, dismissal was error.

## POINT VI

## PLAINTIFFS SHOULD HAVE BEEN GRANTED LEAVE TO CURE ANY PURPORTED FACTUAL DEFICIENCIES

To the extent that there were any pleading deficiencies, the district court erred in denying Plaintiffs an opportunity to replead. Fed.R.Civ.P. 15(a) requires that "leave [to amend] shall be freely given when justice so requires." *See Foman v. Davis,* 371 U.S. 178, 182 (1962). When a motion to dismiss is granted, "the usual practice is to grant leave to amend the complaint." *Ronzani v Sanofi S.A.*, 899 F2d 195, 198 [2d Cir 1990] (quoting 2A Moore & Lucas, Moore's Federal Practice ¶ 12.14 at 12–99 (2d ed. 1989); *see also Luce v. Edelstein,* 802 F.2d 49, 56 (2 Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend."). Although the decision whether to grant leave to amend is within the discretion of the district court, refusal to grant leave must be based on a valid ground. *Id*. citing *Foman v. Davis,* 371 U.S. at 182 ("outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion").

The Amended Complaint was well pled, and Defendants' motion did not argue purported pleading deficiencies. It appears that the district court agreed, as dismissal of the claims was not based on purported pleading deficiencies. However, to the extent that the district court required that certain facts be fleshed out in order to support the claims, leave should have been granted.

## CONCLUSION

WHEREFORE, by reason of the foregoing, Plaintiffs respectfully request that this Court reverse the lower's court's dismissal of the complaint and remand the matter for further proceedings, and grant such other and further relief as this Court deems just, proper and equitable.

Dated: August 6, 2025

LIEB AT LAW, P.C.
*Attorneys for Plaintiffs-Appellants*

By: */s/ Cheryl L. Berger, Esq.*
Cheryl L. Berger
308 W. Main St., Ste. 100
Smithtown, NY 11787
(646) 216-8009
Cheryl@Liebatlaw.com

## CERTIFICATE OF COMPLIANCE

Certificate of Compliance with Type-Volume Limit, Typeface Requirements and Type-Style Requirements.

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 9,252 words.

2. This document complies with the typeface requirements of Fed. S. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word (2019/Office) in 14-point font, Times New Roman.

Dated: August 6, 2025

LIEB AT LAW, P.C.
*Attorneys for Plaintiffs-Appellants*

By: */s/ Cheryl L. Berger, Esq.*

Cheryl L. Berger
308 W. Main St., Ste. 100
Smithtown, NY 11787
(646) 216-8009
Cheryl@Liebatlaw.com