# 25-1197

## United States Court of Appeals
*for the*
## Second Circuit

CHRISTOPHER DOLCE, SHINAIDE MCALEAVEY–POLLEY, SARAH ECKE,

*Plaintiffs-Appellants,*

NEW YORK LGBT NETWORK, INC.,

*Plaintiff,*

– v. –

CONNETQUOT CENTRAL SCHOOL DISTRICT, CONNETQUOT BOARD OF EDUCATION, LYNDA G. ADAMS, REZA KOLAHIFAR, JACLYN NAPOLITANO-FURNO, LEE KENNEDY, MICHAEL MORAN,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK

**BRIEF FOR DEFENDANTS-APPELLEES CONNETQUOT CENTRAL SCHOOL DISTRICT, CONNETQUOT BOARD OF EDUCATION, LYNDA G. ADAMS, REZA KOLAHIFAR AND JACLYN NAPOLITANO-FURNO**

BRIAN S. SOKOLOFF
BLAIR HENDRICKS
SOKOLOFF STERN LLP
*Attorneys for Defendants-Appellees Connetquot Central School District, Connetquot Board of Education, Lynda G. Adams, Reza Kolahifar and Jaclyn Napolitano-Furno*
179 Westbury Avenue, Suite 201
Carle Place, New York 11514
(516) 334-4500

COUNSEL PRESS (800) 4-APPEAL • (387399)

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ iii

PRELIMINARY STATEMENT ........ 1

STATEMENT OF ISSUES PRESENTED ........ 1

JURISDICTIONAL STATEMENT ........ 3

STATEMENT OF THE CASE ........ 3

SUMMARY OF THE ARGUMENT ........ 6

ARGUMENT ........ 11

I. THE DIRECTIVE TO REMOVE FLAGS, INCLUDING ECKE'S POLITICAL FLAG, IS LAWFUL ........ 12

A. The Supreme Court's *Hazelwood* Standard Applies Because (a) Flags on the Wall of a School Classroom During Instruction are Reasonably Perceived As School Speech and (b) Relate to Legitimate Pedagogical Concerns ........ 12

i. Reasonably Perceived to be School Sponsored ........ 14

ii. Related to Legitimate Pedagogical Concern ........ 17

B. The District's Rules About Flags Were Viewpoint Neutral and Applied Equally to All Flags in Classrooms ........ 18

II. THE DISTRICT DID NOT ENGAGE IN VIEWPOINT DISCRIMINATION ........ 22

A. The Classroom During Instructional Time is Not a Limited Public Forum ........ 22

B. The Directive To Remove Flags Is Not an Impermissible Prior Restraint ........ 24

III. THE LOWER COURT PROPERLY GRANTED QUALIFIED IMMUNITY TO THE INDIVIDUAL DEFENDANTS ........ 26

IV. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' CLAIMS UNDER TITLE VII AND TITLE IX ....29

A. Plaintiffs Did Not Suffer Any Adverse Employment Action ....29

B. Plaintiffs Did Not Establish an Inference of Discrimination ....31

C. Appellants Abandoned Their Retaliation Claims ....33

V. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' EQUAL PROTECTION CLAIM ....34

A. The Equal Protection Claim Was Duplicative ....34

B. The Court Below Properly Found that Appellants' Selective Enforcement Claim Failed for Lack of Comparators ....35

VI. THE DISTRICT PROPERLY DISMISSED THE MONELL CLAIM ....38

VII. THE DISTRICT COURT PROPERLY DECLINED TO EXERCISE SUPPLEMENTAL JURISDICTION OVER STATE-LAW CLAIMS ....41

VIII. THE DISTRICT COURT HAD GOOD REASON FOR NOT GRANTING LEAVE TO AMEND THE COMPLAINT AGAIN ....43

CONCLUSION ....45

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Agosto v. N.Y.C. Dept of Educ.*,
982 F.3d 86 (2d Cir. Dec. 4, 2020) .......... 38, 39

*Baeringer v. Plainview-Old Bethpage Cent. Sch. Dist.*,
No. 23-CV-03557, 2024 WL 3161814 (E.D.N.Y. June 25, 2024) .......... 38-39

*Best Payphones, Inc. v. Dobrin*,
410 F.supp.3d 457 (E.D.N.Y. 2019) .......... 34

*Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*,
457 U.S. 853 (1982) .......... 12

*Bockus v. Maple Pro, Inc.*,
850 F. App'x 48 (2d Cir. 2021) .......... 29, 32

*Brown v. Chicago Bd. Of Educ.*,
824 F.3d 713 (7th Cir. 2016) .......... 27

*Byrd v. Middletown Bd. Of Educ.*,
2024 WL 4871885 (D. Conn. Nov. 22, 2024) .......... 12, 26

*Chapman v. Crane Co.*,
694 F. App'x 825 (2d Cir. 2017) .......... 41

*City of San Diego v. Roe*,
543 U.S. 77 (2004) .......... 20

*Collins v. Putt*,
979 F.3d 128 (2d Cir. 2020) .......... 6, 13

*Connick v. Thompson*,
563 U.S. 51 (2011) .......... 38

*Edwards v. Aguillard*,
482 U.S. 578 (1987) .......... 20, 21

*Evans-Marshall v. Bd. Of Educ. Of Tipp City Exempted Vill. Sch. Dist.*,
624 F.3d 332 (6th Cir. 2016) .......... 27

*Frierson v. Troy City Sch. Dist. Bd. of Educ.*,
No. 117CV0044, 2018 WL 1357373 (N.D.N.Y. Mar. 15, 2018),
*aff'd*, 2023 WL 4441980 (2d Cir. July 11, 2023) .......... 22

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) .......... 12, 20, 27, 36

*Gordon v. City of Hamtramck*,
2025 WL 1970243 (E.D. Mich. 2025) .......... 11, 23

*Graham v. Long Island R.R.*,
230 F.3d 34 (2d Cir. 2000) .......... 35

*Grand Medford Ests., LLC v. Town of Brookhaven*,
2024 WL 4440231 (2d Cir. Oct. 8, 2024) .......... 34

*Hansen v. City of New York*,
No. 24-cv-2808, 2025 WL 588119 (S.D.N.Y. Feb. 24, 2025) .......... 41

*Hazelwood Sch. District v. Kuhlmeir*,
484 U.S. 260 (1988) .......... *passim*

*Heim v. Daniel*,
81 F.4th 212 (2d Cir. 2023) .......... 27

*Hershey v. Goldstein*,
938 F. Supp. 2d 491 (S.D.N.Y. Apr. 9, 2013) .......... 22

*Hill v. Colorado*,
530 U.S. 703 (2000) .......... 25

*Hu v. City of New York*,
927 F.3d 81 (2d Cir. 2019) .......... 35

*Hunter v. Bryant*,
502 U.S. 224 (1991) .......... 26

*James v. Board of Educ.*,
461 F.2d 566 (2d Cir. 1972) .......... 16, 17

*Johnson v. Perry*,
859 F.3d 156 (2d Cir. 2017) .......... 22

*Johnson v. Poway Unified Sch. Dist.*,
658 F.3d 954 (9th Cir. 2011) .......... *passim*

*Johnson v. Poway Unified Sch. Dist.*,
No. 07 CV 783, 2008 WL 5657801 (S.D. Cal. Sept. 4, 2008) ............................19

*Khazin v. City of New York*,
2025 WL 1091241 ..........................................................................................30

*Kirby v. Yonkers Sch. Dist.*,
767 F. Supp.2d 452 (S.D.N.Y. Feb. 11, 2011) ....................................................16

*Lee-Walker v. N.Y.C. Dep't of Educ.*,
220 F. Supp. 3d 484 (S.D.N.Y. 2016) ........................................................ 12, 27

*Littlejohn v. City of New York*,
795 F.3d 297 (2d Cir. 2015).............................................................................32

*Make The Rd. by Walking, Inc. v. Turner*,
378 F.3d 133 (2d Cir. 2004).............................................................................23

*Miller v. United States ex rel. Miller*,
110 F.4th 533 (2d Cir. 2024).............................................................................43

*Muldrow v. City of St. Louis*,
601 U.S. 346 (2024) ................................................................................ 30, 31

*Nat'l Rifle Ass'n of Am. v. Vullo*,
144 F.4th 376 (2d Cir. 2025).............................................................................26

*Norton's v. Sam's Club*,
145 F.3d 114 (2d Cir. 1998).............................................................................33

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
460 U.S. 37 (1983) ................................................................................ 23, 24

*Pickering v. Bd. Of Educ. of Twp. High Sch. Dist. 025*,
391 U.S. 563 (1968) .........................................................................................20

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017).............................................................................43

*Satanic Temple v. City of Belle Plaine, Minnesota*,
80 F.4th 864 (8th Cir. 2023) .............................................................................24

*Shurtleff v. City of Bos., Massachusetts*,
596 U.S. 243 (2022) .........................................................................................24

*Shurtleff v. City of Bos., Massachusetts*,
597 U.S. 243 (2022) ....................................................................................11

*Silano v. Sag Harbor Union Free Sch. Dist. Bd. Of Educ.*,
42 F.3d 719 (2d Cir. 1994)........................................................................ 15, 27

*Singh v. Sachem Cent. Sch. Dist.*,
No. 20-CV-00146, 2025 WL 1616622 (E.D.N.Y. June 6, 2025) .........................40

*Smith v. City of New York*,
2025 WL 1983047 (S.D.N.Y. June 3, 2025)........................................................31

*Spence v. State of Wash.*,
418 U.S. 405 (1974) ....................................................................................11

*Stromberg v. California*,
283 U.S. 359 (1931) ....................................................................................11

*Tanvir v. Tanzin*,
120 F.4th 1049 (2d Cir. 2024)...........................................................................26

*TechnoMarine SA v. Giftports, Inc.*,
758 F.3d 493 (2d Cir. 2014)...............................................................................43

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir. 2003)........................................................................ 29-30

*Tinker v. Des Moines*,
393 U.S. 503 (1969) ............................................................... 12, 13, 16, 36

*Tyler v. City of Kingston*,
74 F.4th 57 (2d Cir. 2023)..................................................................................24

*VanBrocklen v. United States*,
No. 08-cv-312, 2009 WL 819382 (N.D.N.Y. Mar. 26, 2009) ..............................44

*Vasquez v. Yonkers Pub. Sch. Dist.*,
No. 24-1220, 2025 WL 893368 (2d Cir. Mar. 24, 2025).............................. 38, 39

*Vega v. Hempstead Union Free Sch. Dist.*,
801 F.3d 72 (2d Cir. 2015).......................................................................... 29, 32

*Vengalattore v. Cornell Univ.*,
36 F.4th 87 (2d Cir. 2022)..................................................................................29

*Wang v. Bethlehem Cent. Sch. Dist.*,
No. 121CV1023, 2022 WL 3154142 (N.D.N.Y. Aug. 8, 2022) ....40

*Weingarten v. Bd. of Educ. of City Sch. Dist. of City of New York*,
591 F. Supp. 2d 511 (S.D.N.Y. 2008) ....17

*Weintraub v. Board of Education*,
593 F.3d 196 (2d Cir. 2010) ....26

*West Virginia Bd. Of Educ. v. Barnette*,
319 U.S. 624 (1943) ....11

*White v. Pauly*,
580 U.S. 73 (2017) ....26

*Wu v. Good Samaritan Hosp. Med. Ctr.*,
815 F. App'x 575 (2d Cir. 2020) ....32

*Zahra v. Town of Southold*,
48 F.3d 674 (2d Cir. 1995) ....35

*Zappia v. Myovant Scis. Ltd.*,
No. 24-253-CV, 2025 WL 338351 (2d Cir. Jan. 30, 2025) ....43

**Statutes and Other Authorities:**

U.S. Const. amend. I .... *passim*

U.S. Const. amend. XIV ....35

28 U.S.C. § 1367(c)(1) ....41

28 U.S.C. § 1367(c)(3) .... 9, 41

42 U.S.C. § 1983 ....38

Fed. R. Civ. P. 12(b)(6) .... 39, 43

## PRELIMINARY STATEMENT

A school district's efforts to prevent teachers, during class time, from foisting upon a captive audience of students the teachers' personal views about hot-button political issues violates neither the First Amendment nor federal employment discrimination statutes.

The Supreme Court has long recognized that it is the province of school districts, not teachers or courts, to make pedagogical decisions about when, how, and if to present educational topics to young students. A school district's direction to a special education math teacher to remove large political symbols from the walls of her math classroom fits neatly in that scheme, especially when the teacher's blatant political messaging violated longstanding district policy.

Judge Hector Gonzalez wrote a comprehensive and well-reasoned decision below, which this Court should affirm on appeal. The Brief for Plaintiffs-Appellants not only fails to show how the lower court erred on anything, but it also invents facts or even allegations not in the record.

## STATEMENT OF ISSUES PRESENTED

1. Whether the law should treat the placement of Progress Pride and Traditional Pride flags on the walls of a math classroom during instructional time as school-sponsored speech;

2. Whether the District's decision to implement a directive removing all decorative flags from the classroom during school hours to enforce an existing

policy prohibiting political speech by teachers is reasonably related to a legitimate pedagogical concern;

3. Whether the flag and sticker policies that prohibited all teachers from displaying any flag in their classroom during school hours save the American flag, the New York State flag, and a curriculum-specific flag (*e.g.*, a French flag in a French class) constitute impermissible viewpoint discrimination;

4. Whether the District Court properly granted qualified immunity to the individual defendants where there is no clearly established right of a teacher to promote personal political viewpoints in the classroom during class time and where the governing standard of a secondary teachers' speech in the classroom during class time is not clearly established;

5. Whether the District Court erred in dismissing the Title VII and Title IX discrimination claims by finding that removal of decorations from a classroom during school hours is not adverse employment action in either context;

6. Whether the District Court erred in dismissing the Equal Protection claim as duplicative of the First Amendment claims and where Plaintiffs failed identify better treated similarly situated comparators;

7. Whether the District Court erred in dismissing the *Monell* claim when the flag removal directive did not come from a final policymaker;

8. Whether the District Court erred in declining to exercise supplemental jurisdiction over the state-law claims after dismissing all federal claims; and

9. Whether the District Court properly declined leave to amend the complaint a second time where any amendment would have been futile and where Plaintiffs did not request leave to amend from the District Court.

## JURISDICTIONAL STATEMENT

Plaintiffs-Appellants appeal from the District Court's April 9, 2025 Order granting the motion by Defendants-Appellees to dismiss the Amended Complaint. (A-199-229; Dkt. Entry No. 70.) Plaintiffs filed their notice of appeal on May 7, 2025. Plaintiffs perfected their appeal on August 6, 2025.

## STATEMENT OF THE CASE

Plaintiffs-Appellants, Christopher Dolce, Sarah Ecke, and Shinaide McAleavey-Polley ("McAleavey") (collectively "Plaintiffs"), are high school teachers in the Connetquot School District ("the District"). (A-24, AC ¶ 31[1]) Ecke is the faculty advisor for the District's Gender and Sexuality Alliance ("GSA") student club. (A-37, AC ¶¶ 115-16.) Dolce, Ecke, and McAleavey openly identify as members of the LGBTQ+ community. (A-24, AC ¶ 34.)

Early in the 2022-2023 school year, a student reported feeling uncomfortable about the "Progress Pride Flag" ("Progress Flag") displayed in a classroom. (A-73.) On September 14, 2022, Superintendent Lynda G. Adams and Board of Education Members Jaclyn Napolitano-Furno ("Napolitano") and Lee Kennedy came to Ecke's classroom. (A-27, AC ¶ 60.) In it they saw displayed (a) a flag—the Progress Flag—

[1] Citations to the record with "AC" refer to the Amended Complaint and to paragraphs therein.

twice the size of the American flag in the room and (b) a traditional Gay Pride Flag. (A-73.)[2]

Although the District asked Ecke to take down the Progress Pride flag during classroom hours because of its political nature, it allowed her to continue displaying the Pride Flag. (A-73.) Ecke refused. (A-73.) The District also offered Ecke a sign to hang in her classroom that read, "This is a safe space to be who you are," which Ecke also refused. (A-73.)

On October 4, 2022, the District reminded all employees about existing District policy to "not engage in any active political practices that would exclude any student or make an individual feel uncomfortable," which included "discussions centered around personal beliefs and flags denoting political views." (A-71, A-73.)

Complying with that policy, the District directed all teachers to remove all flags from their classrooms, except for the American flag, the New York State flag, and any curriculum-specific flag, like a French flag in a French classroom. (A-75.) Under the same no-politics policy, the District prohibited employees from affixing "flag stickers" to District property. (A-78.)[3] These policies generated backlash among some teachers. (A-80-85, A-87-88.)

---

[2] The best way to understand what Ecke's classroom looked like with the two flags is to see a photo of it, which appears at A-128.

[3] In Appellants' brief here, they invent this fact: Plaintiffs were "encouraged by the school to decorate their classrooms as they deemed fit." The cited support for that statement says no such thing.

On October 15, 2022, Dolce and McAleavey discovered that someone had covered a gay pride flag sticker on Dolce's door with an American flag sticker. (A-31, AC ¶ 84.) Dolce and McAleavey reported this vandalism the next day to Principal Michael Moran. (A-31, AC ¶ 85.) On October 17, 2022, Moran notified Dolce and McAleavey that a student was responsible for the vandalism and that he would face a three-day suspension. (A-32, AC ¶ 91.) The student had also covered stickers on Ecke's classroom door. (A-32, AC ¶ 91.) The next day, Adams modified the suspension. (A-32, AC ¶ 92.) That day, the District notified all faculty and staff members that they could not affix stickers to classroom doors and windows. (A-78.) The stickers could damage public property. (A-85)

On October 18, 2022, Dolce emailed Superintendent Adams about his disagreement with the Flag and sticker directives. (A-81-82.) Superintendent Adams then offered to meet with Dolce and discuss the policies; Dolce declined. (A-80-82.) In February 2023, anti-LGBTQ graffiti was found on a few occasions on District property. (A-36, AC ¶¶ 108, 110.) Suffolk County police investigated these graffiti incidents. (A-36, AC ¶ 109.)

In or around May 2023, Ecke distributed slips seeking permission to take students to an LGBT Youth Conference scheduled for May 22, 2023[4]. (A-37, AC

[4] The Court can take judicial notice of the nature of the conference from the LGBT Network's advertisement of the conference, taken from the internet's "Way Back

¶ 118.) The LGBT Youth Conference is an advocacy program run by the LGBT Network. On May 9, 2023, a parent sent a "negative email" about the Youth Conference field trip. (A-37, AC ¶ 118.) In response, Principal Moran reminded Ecke that the District had approved the field trip and asked Ecke to create a permission slip for the Youth Conference field trip that included the full title and purpose of the field trip. (A-37, AC ¶¶ 118-19.) Ecke did not comply by the deadline. (A-37, AC ¶ 119.)

## SUMMARY OF THE ARGUMENT

*Hazelwood Sch. District v. Kuhlmeir*, 484 U.S. 260 (1988) governs Plaintiffs' viewpoint discrimination claims. It holds that a school district may regulate speech reasonably perceived to be school sponsored where it relates to a legitimate pedagogical concern. *See Collins v. Putt*, 979 F.3d 128, 132-33 (2d Cir. 2020). The Progress Pride flag on the wall of a special education math classroom during school hours is reasonably perceived to be school-sponsored speech.

The Progress Pride Flag is a political symbol representing the advancement of rights for LGBTQ+ individuals[5]—a political hot topic across the county. After a

---

Machine" archive website and annexed to the Sokoloff Declaration as Exhibit "B" (A-96-100.)

[5] The Court can take judicial notice of the meaning of the Progress Pride Flag from a display about its origin and meaning at the Victoria and Albert Museum in England: https://www.vam.ac.uk/articles/the-progress-pride-flag?srsltid=AfmBOopkYFeoO4ceuQ-DOr0zKQzkv6b6a-pHhIGobuBZNLN1woOcBuIZ

parent complained about the Progress Pride Flag on the wall of the classroom, the Superintendent directed *all* teachers to remove *all* flags besides the American flag, the New York State flag, and any flag related to the classroom subject; the Superintendent drew on existing District policy, which forbid teachers from engaging in political speech in the classroom.

The directive to remove all decorative and personal flags from the classroom during the school day is a lawful restriction of school-sponsored speech related to a legitimate pedagogical concern and is thus not viewpoint discrimination.

The classroom during the school day is not a limited public forum, and the District's even-handed regulation of speech in the classroom during instructional time is neither viewpoint discrimination nor prior restraint. Even if the Court found the classroom a limited public forum, the District lawfully closed the forum through its the directive to remove the flags, as the First Amendment permits.

The lower court properly granted qualified immunity to the individual defendants as the standards governing a secondary school teacher's speech in the classroom during class time are not clearly established in the Circuit. teachers have no clearly established right to express their political viewpoints to students during class time.

Requiring all teachers, including Ecke, to remove her political flags; requiring all teachers, including Plaintiffs, to remove decorative stickers from the classroom;

and requiring Ecke to modify a field trip permission slip are not adverse employment actions under Title VII or Title IX.

Because the record submitted by Plaintiffs shows that the directives to remove the flags, stickers, and modify the field trip permission slip responded to parent complaints and not because of Plaintiffs' sexual orientation, Plaintiffs have not shown the discriminatory animus required to support a Title VII or a Title IX discrimination claim.

Plaintiffs have abandoned their Title VII and Title IX retaliation claims by failing to address them on appeal.

The District Court properly dismissed Plaintiffs' Equal Protection claim as duplicative of Plaintiffs' First Amendment claim. In addition, the District Court properly found that Plaintiffs failed to identify similarly situated comparators. Their list of symbols—including student decoration of their own parking spot and personal religious jewelry by teachers—are unlike a math teacher displaying political symbols to her captive audience of special education math students. Symbolic speech by students in their individual parking spots have different First Amendment protection than do teachers during in class instruction. The religious jewelry allegedly worn by others throughout the District does not "bear the imprimatur" of the school that a flag in a classroom does; that, too, is an inapt comparator.

The District Court properly dismissed Plaintiffs' *Monell* claim. The directive to remove the flags from the classroom during the school day came from the Superintendent and Principal (not the Board of Education) to enforce a written Board policy (Policy 1310) prohibiting political activity in the classroom by teachers. This Circuit has held that a school superintendent and principal are not final policymakers for a *Monell* claim.

After dismissing Plaintiffs' federal claims, the district court properly declined to exercise supplemental jurisdiction over their state-law claims. A federal court may decline to exercise supplemental jurisdiction over state-law claims when no federal claims remain in an action. 28 U.S.C. § 1367(c)(3). Further, the remaining state-law claims—including discrimination, retaliation, hostile work environment, and circulation of discriminatory statements under the New York State Human Rights Law and Suffolk County Human Rights Law—have unique standards under state law. The law governing the Suffolk County Human Rights Law is not settled, presenting a novel and complex issue of state law.

Plaintiffs have since refiled their state-law claims in state court, and so this Court should decline to hear the state law now claims to avoid risk of conflicting rulings on them.

The lower correctly determined that there was no good reason to allow Plaintiffs further to amend their Amended Complaint. They neither asked for it nor specified what they would add to resuscitate their moribund case.

Finally, it is important to understand what this case is *not* about. It is not about an edict by a principal or school district to remove a Progress Pride Flag or Gay Pride Flag from the walls of the classroom when the teacher and students used that room during after-school meetings of the Gender Sexuality Alliance. The District allowed Ecke to put both flags on the wall during such meetings. This case relates only to the flags on the wall during instructional hours.

## ARGUMENT

In the recent case of *Gordon v. City of Hamtramck*, 2025 WL 1970243 (E.D. Mich. 2025), United States District Judge David M. Lawson penned the appropriate preface for our case:

> From ancient times, flags have been symbols of patriotism, protest, affinity, alarm, warning and affirmation. They can express national pride, rally and motivate populations, inflame community spirit, provoke public criticism, and even stir violence. Flags can convey important messages.
>
> . . . .
>
> As the Supreme Court has recognized, '[f]lags are almost as old as human civilization. Indeed, flags *symbolize* civilization.' *Shurtleff v. City of Bos., Massachusetts*, 597 U.S. 243, 253 (2022). For decades, the Supreme Court has recognized 'the communicative connotations of the use of flags.' *Spence v. State of Wash.*, 418 U.S. 405, 410 (1974). Flags, including the American flag, can be symbols of protest. *E.g.*, *Stromberg v. California*, 283 U.S. 359 (1931). Flags can be employed as 'a form of symbolism comprising a 'primitive but effective way of communicating ideas…, ' and 'a short cut from mind to mind.'' *Spence*, 418 U.S. at 410 (quoting *West Virginia Bd. Of Educ. v. Barnette*, 319 U.S. 624, 632 (1943)). 'Not just the content of a flag, but also its presence and position have long conveyed important messages about government…. It can be accepted that the display of flags can be a communicative source of intense human emotion.

## I. THE DIRECTIVE TO REMOVE FLAGS, INCLUDING ECKE'S POLITICAL FLAG, IS LAWFUL.

### A. The Supreme Court's *Hazelwood* Standard Applies Because (a) Flags on the Wall of a School Classroom During Instruction are Reasonably Perceived As School Speech and (b) Relate to Legitimate Pedagogical Concerns.

The Supreme Court has "long recognized that local school boards have broad discretion in the management of school affairs." *Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 863 (1982). The District Court, however, recognized that the standard governing Plaintiffs' viewpoint discrimination claim presents an "open question" in the Circuit. (A-217.) *See also Lee-Walker v. N.Y.C. Dep't of Educ.*, 220 F. Supp. 3d 484, 491 (S.D.N.Y. 2016) ("It…remains an open question in this Circuit whether *Garcetti* applies to classroom instruction); *see also Byrd v. Middletown Bd. Of Educ.*, 2024 WL 4871885, at *5 (D. Conn. Nov. 22, 2024) ("The Second Circuit has applied three different standards to speech made by educators in different contexts, and has no holdings determining what rule applies to the type of speech here.")

Plaintiffs advocate for the *student* speech standard of *Tinker v. Des Moines*, 393 U.S. 503 (1969), which considered student black arm bands worn to protest the Vietnam War. This Court has recognized that *Tinker* allows school officials to "regulate student speech that the school does not sponsor if that speech would

'materially and substantially disrupt classwork and discipline in the school." *Collins v. Putt*, 979 F.3d 128, 133 (2d Cir. 2020) (citation omitted).

The flags at issue here, however, were not student speech. They were teacher political speech – on the wall of the math classroom during instructional hours. *Tinker* does not apply, but another Supreme Court case does: *Hazelwood Sch. District v. Kuhlmeier*, 484 U.S. 260 (1988). In *Hazelwood*, the Supreme Court considered the right of a school principal to withhold from a student newspaper student-authored stories about pregnancy and divorce. The Supreme Court held that the principal did not violate the First Amendment because the school newspaper, even though written by students, bore the imprimatur of the school district.

According to the Court, "Educators are entitled to exercise greater control over… [student expression that the public might reasonably perceive to bear the imprimatur of the school] to assure that… readers or listeners are not exposed to material that may be inappropriate for their level of maturity, and that the views of the individual speaker are not erroneously attributed to the school." 484 U.S. at 271.

The Court continued: "A school must also retain the authority to refuse to sponsor student speech that *might reasonably be perceived… to associate the school with any position other than neutrality on matters of political controversy.*" 484 U.S. at 272 (emphasis added).

The Court in *Hazelwood* added that a school district could regulate speech bearing the seeming imprimatur of the school so long at the school's actions "are reasonably related to legitimate pedagogical concerns." 484 U.S. at 273.

Directing a teacher to remove a political symbol from the wall of a math class during instructional time is a reasonable and lawful limit on school-sponsored speech that is reasonably related to a legitimate pedagogical concern. In fact, it falls within the heartland of acts permitted identified by *Hazelwood*: it "might reasonably be perceived… to associate the school with any position other than neutrality on matters of political controversy." *Hazelwood* applies.

***i. Reasonably Perceived to be School Sponsored***

If anything, the student written stories in a student newspaper bear less of an imprimatur of a school district that the instructional walls of a school classroom, where students sit as a captive audience forced to gaze for days, weeks, and months upon the political messages during math class. The same reason Ecke wanted to convey her political message on the wall of her classroom (as opposed to as a bumper sticker on her car or as a flag on her lawn or anywhere outside the classroom) is that students *had* to see the message in the classroom. Besides that, Ecke is a special education math teacher, not a social studies teacher. There is not the remotest

connection between the rights of gay, trans, or other marginalized groups and mathematics.[6]

Any interpretation of the First Amendment that forbids a school district preventing Ecke from using the walls of her math classroom to advocate for her political positions would also prevent school districts from stopping teachers from using the walls of their classrooms for MAGA flags, political campaign posters, or even a computer screen running silent political messages all day long.

Plaintiffs attempt improperly on appeal to embellish the facts alleged in their pleading. They contend, without citation, that the teachers bought the flags and stickers with their own money, and that the District "intentionally open[ed] a forum for indiscriminate expressive use by teachers," meaning that people would not reasonably perceive the imprimatur of the school on those walls. (Pl. Br. pp. 18-19.) They fail to explain how any student would know that the teacher bought the flag or that the wall reflects the views of the teacher alone and not the District.

Plaintiffs' argument is not just counter-intuitive, it ignores the law. In *Silano v. Sag Harbor Union Free Sch. Dist. Bd. Of Educ.*, 42 F.3d 719, 723 (2d Cir. 1994), this Court, citing *Hazelwood*, allowed public school administrators to exercise

---

[6] On p. 4 of their brief, Appellants write that the District "permitted" Ecke (1) to have the LGBT Pride Flag in her classroom for six years and (2) the Progress Flag in her classroom for a year. Their citations for both statements are wrong and fail to show any such permission to Ecke from the District.

control over a guest lecturer—not even a teacher or student. Similarly, in *Kirby v. Yonkers Sch. Dist.*, 767 F. Supp.2d 452, 461 (S.D.N.Y. Feb. 11, 2011), the Southern District found that the *Hazelwood* standard applied to an "icebreaker activity" in which the lecturer, as an introduction to a discussion of human reproduction, prompted students to draw male genitalia on a blackboard. Such activity was not part of the lesson plan the teacher submitted before the lesson. He claimed that the First Amendment protected his use of the activity.

According to the Southern District of New York, "Kirby's use of the icebreaker was not protected by the First Amendment. The fact that [another teacher] was allegedly doing the same type of exercise with her students does not mean that the District cannot make a decision to restrict it." 767 F.Supp.2d 461-2.

Thus, speech in the traditional classroom to a captive audience during the instructional time is speech that a reasonable person would perceive to be school-sponsored and is thus subject to regulation under *Hazelwood*. Ecke's prominent display of a traditional Pride Flag and the new Progress Pride Flag during math class fits neatly under *Hazelwood*.

Appellants incorrectly cite *James v. Board of Educ.*, 461 F.2d 566 (2d Cir. 1972), a pre-*Hazelwood* case that cited *Tinker* and used its standard of likelihood of disruption. Had this Court considered the Connetquot facts in 1972, perhaps it would have leaned on *Tinker*. But half a century of First Amendment jurisprudence exists

to guide this Court in resolving this case. History has not been kind to *James*. As Judge Lewis Kaplan observed almost twenty years ago, "*James* has been undermined seriously by more than three decades of subsequent decisions." *Weingarten v. Bd. of Educ. of City Sch. Dist. of City of New York*, 591 F. Supp. 2d 511, 519 (S.D.N.Y. 2008). Now, *James* is fifty years old.

***ii. Related to Legitimate Pedagogical Concern***

Keeping politically charged symbols out of the classroom and maintaining a neutral learning environment for all is a legitimate pedagogical concern.

The ability of a school district to regulate speech related to legitimate pedagogical concerns is well-recognized. Under *Hazelwood*:

> Educators are entitled to exercise greater control…to assure that participants learn whatever lessons the activity is designed to reach, that readers or listeners are not exposed to material that may be inappropriate for the level of maturity, and that the views of the individual speaker are not erroneously attributed to the school…. In addition, a school must be able to take into account the emotional maturity of the intended audience in determining whether to disseminate student speech on potentially sensitive topics which might range from the existence of Santa Claus in an elementary school setting to the particulars of teenage sexual activity in a high school setting. A school must also retain the authority to refuse to sponsor student speech that might reasonably be perceived to associate the school with any position other than neutrality on matters of political controversy. Otherwise, the schools would be unduly constrained from fulfilling their role as a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his environment.

*Hazelwood*, 484 U.S. at 271-2.

This is precisely what Connetquot did. After a student expressed discomfort with the Progress flag, the District directed the removal of *all* flags from the classrooms during school hours under a longstanding preexisting policy prohibiting classroom political discussions by teachers.

Plaintiffs' argument that the Progress Flag is a nonpolitical, uncontroversial symbol of inclusion ignores reality. All across the country, political candidates are campaigning on -- and citizens are voting on -- LGBTQ+ issues, such as transgender participation in youth sports[7], gender affirming care[8], and others.[9] The District's decision to keep such hot-button politics (or any politics) out of a math (or any) classroom relates on its face to legitimate pedagogical concerns.

**B. The District's Rules About Flags Were Viewpoint Neutral and Applied Equally to All Flags in Classrooms.**

The District did not engage in viewpoint discrimination when it equally subjected all teachers in the District to the same rules about flags and stickers in the classroom.

Plaintiffs inaccurately characterize the directive to remove all decorative flags from the classroom as a targeted attack on the Progress Pride Flag. While a complaint about the Progress Pride Flag was the event that brought the flag to the attention of

---

[7]See https://thehill.com/homenews/house/4979665-democrats-transgender-athletes/; https://www.lgbtmap.org/equality-maps/youth/sports_participation_bans.
[8] See https://www.nysenate.gov/legislation/bills/2025/S6377/amendment/A.
[9] See https://transequality.org/elections/endorsements.

the school administration, the directive to remove flags did not target the Progress Pride flag. The complaint about the Progress Pride flag alerted administrators to its nature as a political symbol. The District then ensured the removal of *all* political symbols from the classrooms, not just the Progress Pride flag.

As they did below, Plaintiffs rely on a 17-year-old unreported district court case from California, *Johnson v. Poway Unified Sch. Dist.*, No. 07 CV 783, 2008 WL 5657801, at *4 (S.D. Cal. Sept. 4, 2008). They spend three pages of their appellate brief here extolling that case; stunningly, they fail to cite the Ninth Circuit reversal of the district court's reasoning and result. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954 (9th Cir. 2011). In fact, the Ninth Circuit's decision in *Johnson* demolishes Plaintiffs' First Amendment claims.

In *Johnson*, plaintiff teacher alleged that a school district that had a 30-plus year "policy, practice, and custom [under which] all teachers are permitted to display in their classrooms various messages and other items that reflect the individual teacher's personality, opinions, and values, as well as messages relating to matters of political, social, or other similar concerns so long as these displays do not materially disrupt school work or cause substantial disorder or interference in the classroom." Teachers put up all kinds of messages, but the district forbid plaintiff to put up messages related to God and The Creator.

The lower court found that the district's policy created a limited public forum and that the district violated the First Amendment when it directed only Johnson to remove his messages.

The Ninth Circuit found that the district made a "mistake" when it invoked the limited forum analysis. It pointed out that "[T]he Supreme Court has held that where the government acts as both sovereign *and employer*, this general forum-based analysis does not apply." 658 F.3d at 961 (citing *Pickering v. Bd. Of Educ. of Twp. High Sch. Dist. 025*, 391 U.S. 563, 568 (1968); *Garcetti v. Ceballos*, 547 U.S. 410-, 417-19 (2006); *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004)).

The Ninth Circuit observed that Johnson put the messages on the wall of his classroom as a teacher: "[T]eachers do not cease acting as teachers each time the bell rings or the conversation moves beyond the narrow topic of curricular instruction. Rather, because of the position of trust and authority they hold and the impressionable young minds with which they interact, teachers *necessarily* act as teachers for purposes of a *Pickering* inquiry when at school or a school function, in the presences of students, in a capacity one might reasonably view as official." 658 F.3d 967-68. "The State exerts great authority and coercive power through mandatory attendance requirements, and because of the students' emulation of teachers as role models and the children's susceptibility to peer pressure." *Id*. at 968 (*quoting Edwards v. Aguillard*, 482 U.S. 578, 584 (1987)).

The Ninth Circuit also reasoned that "An ordinary citizen could not have walked into Johnson's classroom and decorated the walls as he or she saw fit, anymore than an ordinary citizen could demand that students remain in their seats and listen to whatever idiosyncratic perspective or sectarian viewpoints he or she wished to share…. Johnson took advantage of his position to press his particular views upon the impressionable and 'captive' minds before him." *Id*. at 968.

That reasoning about the danger presented by the forced viewing of political messaging by impressionable students shows why *Hazelwood* is the correct framework to apply here.

But even if the Ninth Circuit had not reversed, and even if *Johson* were authoritative, it is distinguishable. First, unlike the policy of the Poway Unified School District, which encouraged teachers to adorn their classrooms with their individual political and social views, Connetquot's policy was just the opposite. Under its longstanding policy, Connetquot forbade teachers from bringing their politics into the classroom. Second, while Poway singled out Johnson for removal of his messages, Connetquot directed all teachers to removal all flags from their classrooms, save for the American, New York, and a curriculum-appropriate flag.

## II. THE DISTRICT DID NOT ENGAGE IN VIEWPOINT DISCRIMINATION.

### A. The Classroom During Instructional Time is Not a Limited Public Forum.

Plaintiffs incorrectly argue that the classrooms were limited public forums and that the District engaged in viewpoint discrimination by directing the removal of decorative flags from the classrooms. This Court and the courts in this Circuit have recognized that a school can be a limited public forum in certain contexts. *See Johnson v. Perry*, 859 F.3d 156, 175 (2d Cir. 2017) (school gymnasium open to the public during a basketball game was a limited public forum); *see also Hershey v. Goldstein*, 938 F. Supp. 2d 491, 507 (S.D.N.Y. Apr. 9, 2013) (listing common examples of limited public fora, including "state university meeting facilities open for student groups, [and] open school board meetings"); *but see Johson v. v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011) (limited public forum analysis improper when government acts as sovereign and employer).

A classroom during school hours is not akin to these examples as access to the classroom during this time is limited to students and educators. *See Frierson v. Troy City Sch. Dist. Bd. of Educ.*, No. 117CV0044, 2018 WL 1357373, at *4 (N.D.N.Y. Mar. 15, 2018), *aff'd, 2023* WL 4441980 (2d Cir. July 11, 2023) (quoting *Johnson v. Perry*, 859 F.3d at 175) ("On appeal, the Second Circuit concluded that although

a school is generally a nonpublic forum, a school gymnasium that is open to the public 'stands on a different footing' and becomes a limited public forum.")

A classroom is not open to the public and the purpose of classroom time is to educate, not disseminate opinions. To construct a limited public forum out of a teacher's ability to personalize a classroom exceeds common sense and the law.

But even if one treats Plaintiffs' classroom as a limited public forum, the District may close that limited forum. "[I]t is well settled that 'the government may decide to close a designated public forum,' and First Amendment protections apply only as long as the forum remains open." *Gordon v. City of Hamtramck*, No. 23-12812, 2025 WL 1970243, at *8 (E.D. Mich. July 14, 2025) (quoting *Make The Rd. by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004)); *see also Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983) (government "is not required to indefinitely retain the open character of" a designated public forum).

Even if the walls of Ecke's classroom served as a limited public forum, the District closed it with the flag removal directive.

In a recent and factually analogous case, *Gordon v. City of Hamtramck*, No. 23-12812, 2025 WL 1970243, at *8 (E.D. Mich. July 14, 2025), a District Court in Michigan found that the City of Hamtramck closed a public forum when it enacted a regulation restricting the types of flags permitted on municipal flagpoles. Plaintiffs

sought to fly gay pride flags on municipal flagpoles, which the Hamtramck allowed before the new regulations. The court rejected plaintiffs' First Amendment claim:

> [Hamtramck] Regulation 2023-82 follows the exact pattern called out in *Shurtleff* [*v. City of Bos., Massachusetts*, 596 U.S. 243 (2022)] as both valid and dispositive, where it prescribed a discrete listing of flags representing only governmental sovereigns as approved for display, plus the prisoner-of-war tribute flag. By enacting that regulation, the City tipped the balance and converted the flagpoles from a forum for public speech in some capacity to a nonpublic forum reserved for government speech only. Such a closure of a formerly (at least partially) public forum is constitutionally permissible, even if the results in prospectively foreclosing private speech that was allowed under prior regulations.

*Id.* (citing *Shurtleff v. City of Bos., Massachusetts,* 596 U.S. 243, 253 (2022); *Perry*, 460 U.S. at 45; *Satanic Temple v. City of Belle Plaine, Minnesota*, 80 F.4th 864, 868 (8th Cir. 2023)).

**B. The Directive To Remove Flags Is Not an Impermissible Prior Restraint.**

The District did not prevent Ecke from hanging the Pride Flag and the Progress Pride Flag, as the District permitted her to hang those flags during meetings of the GSA after school. One could look at the District's directive as a lawful time place, and manner restriction. *See Tyler v. City of Kingston*, 74 F.4th 57, 65 (2d Cir. 2023) (neutral limitation on signs during city council meeting was a permissible time, place, and manner restriction on speech in a limited public forum).

The District directed removal of the flags from the classroom during the school day—when students would have no ability to avoid it. By allowing Ecke to

display the flags after school hours and when her student group meets, students had the option to decide whether to engage with the speech. *See Hill v. Colorado*, 530 U.S. 703, 734 (2000) ("Private citizens have always retained the power to decide for themselves what they wish to read, and within limits, what oral messages they want to consider.").

## III. THE LOWER COURT PROPERLY GRANTED QUALIFIED IMMUNITY TO THE INDIVIDUAL DEFENDANTS.

"Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law,' and it generally attaches to conduct that 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Nat'l Rifle Ass'n of Am. v. Vullo*, 144 F.4th 376, 389 (2d Cir. 2025) (citing *White v. Pauly*, 580 U.S. 73, 78-79 (2017)). "In this Circuit, officials are generally entitled to qualified immunity for their official acts unless the plaintiff 'pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *Id.* (citing *Tanvir v. Tanzin*, 120 F.4th 1049, 1060 (2d Cir. 2024)).

The Supreme Court has repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The District Court correctly assessed the lack of clarity governing the speech at issue here. In *Byrd v. Middletown Board of Education*, 2024 WL 4871885, * 5 (D. Conn. 2024), a case involving teacher classroom speech, the court correctly observed that "The Second Circuit has applied three different standards to speech made by educators in different contexts, and has no holdings determining what rule applies to the type of speech at issue here." It identified (1) *Weintraub v. Board of Education*, 593 F.3d 196 (2d Cir. 2010) (teacher grievance against principal for not disciplining

a student who threw a book at teacher is not protected speech because of *Garcetti v. Ceballos,* 547 U.S. 410 (2006); (2) *Heim v. Daniel*, 81 F.4th 212, 234 (2d Cir. 2023) (public university economics professor's First Amendment claim that his Keynesian economic views are First Amendment protected, and this Court rejected *Garcetti*, instead applying a balancing test between the professor's interest in academic freedom and university's interest "in deciding for itself what skills, expertise, and academic perspectives it wishes to prioritize in its hiring and staffing decisions"); and *Silano v. Sag Harbor Union Free Sch. Dist. Bd. Of Educ*. 42 F.3d 719 (1994) (when public school lecturer faced discipline for showing brief images of nudity, he claimed he had a First Amendment right to show them; this Court applied *Hazelwood School Dist. V. Kuhlmeier*, 484 U.S. 260 (1988) and found his classroom speech unprotected.)

In *Lee-Walker v. N.Y.C. Dep't of Educ.*, 220 F.Supp.3d 484, 491 (S.D.N.Y. Nov. 23, 2016), Judge John G. Koeltl observed, with regard to the ninth-grade class instruction in that case, that it was "an open question in this Circuit whether *Garcetti* applies to classroom instruction."[10]

---

[10] Judge Koeltl cited the opinions of two other Circuit Courts of Appeals that held that *Garcetti* leaves a primary or secondary schoolteacher's in-classroom speech unprotected: *Brown v. Chicago Bd. Of Educ*. 824 F.3d 713, 715 (7th Cir. 2016); and *Evans-Marshall v. Bd. Of Educ. Of Tipp City Exempted Vill. Sch. Dist.*, 624 F.3d 332, 342-43 (6th Cir. 2016). *See also Johnson .v Poway Unified Sch. Dist.*, 658 F.3d 954, 962-4 (9th Cir. 2011) (Johnson's in classroom speech was made "as an employee, not as a citizen," and therefore could not form the basis of a First Amendment claim.)

Appellants fail to refute the observation of at least two District Judges besides Judge Gonzalez below that the law governing teacher classroom speech is unsettled in this Circuit. Qualified immunity applies.

## IV. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' CLAIMS UNDER TITLE VII AND TITLE IX.

The District Court correctly found that Appellants' claims under Title VII and Title IX fail for want of adverse employment action and a lack of an inference of discrimination.

To plead a Title VII discrimination claim, plaintiffs must allege (1) they are members of a protected class, (2) they were qualified for the position, (3) they suffered adverse employment action, and (4) they have at least minimal support that the employer was motivated by discriminatory intent. *See Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 50 (2d Cir. 2021). Plaintiffs must plausibly support their allegations with facts alleged in the complaint. *See id.*

While this Court recognizes Title IX employment discrimination claims by school employees, s*ee Vengalattore v. Cornell Univ.*, 36 F.4th 87, 103 (2d Cir. 2022), this Court also has "long interpreted Title IX 'by looking to… the caselaw interpreting Title VII." *Id*.

### A. Plaintiffs Did Not Suffer Any Adverse Employment Action.

A plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). According to this Court, "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Terry v. Ashcroft*, 336 F.3d

128, 138 (2d Cir. 2003). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id*.

The directives to all teachers (including Ecke) to remove flags and to all teachers to remove stickers do not, as the District Court found, come close to materially impacting the terms and conditions of Appellants' employment. Their classroom decorations have no bearing on their pay, benefits, working hours, work assignments, job titles, duties and responsibilities, opportunities for advancement, or any other term or condition of employment. And, because neither Dolce nor McAleavey-Polley ever had a Progress Pride or Traditional Pride flag in their classrooms or even wanted them there, their claims are even weaker.

*Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), decided eight days after the decision below, does not change the outcome. In *Muldrow*, the Supreme Court held that Title VII plaintiffs challenging an employment transfer as discriminatory need not "meet a heightened threshold of harm – be it dubbed significant, serous, or something else." 601 U.S. at 353. Because this case does not involve a forced job transfer, *Muldrow* should not apply.[11]

[11] In *Khazin v. City of New York*, 2025 WL 1091241, * 2, this Court observed that, in *Muldrow*, the Supreme Court reiterated that the "materially adverse" standard applied to Title VII retaliation claims. *See Muldrow*, 601 U.S. at 357.

But even if *Muldrow* applies to this non-transfer case, Appellants still did not identify a harm necessary to support a Title VII case. They have failed to allege a change in the terms and conditions of employment that made them worse off.

Plaintiffs do not identify any negative impact of the directive to remove the flags and stickers beyond their disagreement and dislike of it. Removing classroom decorations is comparable to a merely "unpleasant" workplace event, which Title VII does not cover. *See Smith v. City of New York*, 2025 WL 1983047, at *8 (S.D.N.Y. June 3, 2025).

The directive to remove the flags and stickers is also not connected to any identifiable term or condition of employment. While Plaintiffs argue that their "rights" to decorate their classroom are impacted, they do not show how the directive made them worse off.

Similarly, Ecke does not show how one directive to modify a field trip permission slip to give parents more information about their child's trip (after a parent complained) made her worse off. She still took the children on the field trip and suffered no change in any term or condition of employment.

**B. Plaintiffs Did Not Establish an Inference of Discrimination.**

Plaintiffs cannot show an inference of discrimination where the District provided *all* teachers with the same directives about flags in the classroom. The District Court viewed and considered the District-wide emails that Plaintiffs attached

to the Complaint and concluded that they destroyed any claim to discriminatory animus.

A plaintiff can show an inference of discrimination by showing use of degrading terms, "invidious comments" about protected groups, or more favorable treatment of employees outside the protected group. *See Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 580 (2d Cir. 2020) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015)). Even under the minimal burden demanded at the motion to dismiss stage, "the plaintiff[s] must allege sufficient allegations to 'nudge[] [their] claims across the line from conceivable to plausible.'" *Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 50 (2d Cir. 2021) (citing *Vega v. Hempstead Union Free Sch. Dist.,* 801 F.3d 72, 87 (2d Cir. 2015)).

Plaintiffs cannot do so here. The court below observed that, in one of the emails attached to the Amended Complaint, Superintendent Adams explains that the District had issued its District-wide flag removal directive because:

> students in a classroom reported feeling uncomfortable about a flag that was being displayed in that classroom, on the wall directly adjacent to the American flag. This flag, which was at least twice the size of the American flag on display, was the Progress Pride flag. The teacher in this classroom was asked to remove the Progress flag but could continue to display the other flag in the room, which was the traditional Pride flag. This compromise was refused, as was the offer of a sign, already purchased by the District stating, "This is a safe space to be who you are." Unfortunately, with this continued refusal, the district must now fully implement Policy 1310 which states that school employees shall not engage in political activities on school premises…. All of our children deserve a school where they are safe, comfortable

> and respected, regardless of what race, gender, religion, sexual orientation, or political affiliation they espouse to. By adhering to the letter of the Policy, we can neutralize the environment, hopefully making the space feel safe and comfortable for all of our students.

(A-73.)

The District Court correctly found that the emails Plaintiffs attached to their pleading left Plaintiffs bereft of any factual allegation of discriminatory intent. Plaintiffs, who chose include the emails with the pleading, did not allege in the Amended Complaint that anything in them was false. Plaintiffs (a) did not claim that the District invented the complaint by the uncomfortable students, (b) did not claim that the District failed to offer Ecke a classroom sign telling students in her room to feel free to be who they are, and (c) did not deny that the District at first allowed Ecke to keep the Traditional Pride Flag up if she removed the Progress Pride Flag.

Although Plaintiffs might have been better off not including the emails, leaving their impact for summary judgment, they incorporated them into the Amended Complaint and cannot mourn their destruction of the Title VII and Title IX claims.

### C. Appellants Abandoned Their Retaliation Claims.

Plaintiffs do not contest the District Court's dismissal of their Title VII and Title IX retaliation claims. This Court treats issues not properly briefed on appeal as waived or abandoned. *See Norton's v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998);

*see also Grand Medford Ests., LLC v. Town of Brookhaven*, 2024 WL 4440231, at *1 n. 1 (2d Cir. Oct. 8, 2024).

## V. THE DISTRICT COURT CORRECTLY DISMISSED PLAINTIFFS' EQUAL PROTECTION CLAIM.

### A. The Equal Protection Claim Was Duplicative.

The District Court dismissed Plaintiffs' Equal Protection claim "because it is nothing more than a restatement of Plaintiffs' First Amendment retaliation claim." (A-221.) "Courts in the Second Circuit have dismissed equal protection claims that merely restate First Amendment retaliation claims… The reasoning is simple: courts should not unnecessarily stretch sections of the Constitution to reach wrongs already covered by other sections." *Best Payphones, Inc. v. Dobrin*, 410 F.supp.3d 457 (E.D.N.Y. 2019)(citing cases).

Judge Gonzalez correctly found that "Plaintiffs are claiming Defendants retaliated against them by virtue of implementing the District Policies and by burdening Ecke with a more robust permission slip, and that their motivation was 'to inhibit or punish Plaintiffs from exercising their constitutional right of free speech." (A-221-2.)

### B. The Court Below Properly Found that Appellants' Selective Enforcement Claim Failed for Lack of Comparators.

The District Court did not dismiss as duplicative Plaintiffs' selective enforcement claim, a stripe of Equal Protection Claim. It dismissed it for a different fundamental reason: lack of proper comparators.

To sustain a Fourteenth Amendment claim under a selective enforcement theory, Plaintiffs must show "(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." *Hu v. City of New York*, 927 F.3d 81, 91 (2d Cir. 2019) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)).

In *Hu*, the Second Circuit clarified the standard for selective enforcement claims based on impermissible considerations. To state such a claim, a plaintiff must show "the plaintiff's and comparator's circumstances must bear a reasonably close resemblance." *Id.* at 96. Plaintiffs also must show that they were "similarly situated in all material respects to the individuals with whom [they] seek[] to compare [themselves]." *Id.* (Emphasis added) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 29 (2d Cir. 2000)).

Plaintiffs do not properly allege differential treatment from similarly situated comparators. The Amended Complaint contains a vague and meaningless list of

supposedly comparable situations (A-35, AC ¶ 106(a) – (g)), but the list fails to show how these situations remotely compare to a teacher in a math classroom forcing students to see symbols of political causes she supports on the walls of the classroom during math class.[12]

The Amended Complaint mentions painted flags and the word MAGA in the high school parking lot (items "a" and "c"), but the pleading does not say who created these images or when, rending the comparison meaningless.[13] Presumably, a teacher put up a French flag in French class (item "b"), but because that flag relates to the curriculum being taught, it is unlike Ecke's non-curriculum-related flags.

Item "d" lists "Stickers displayed on classroom doors and school bulletins supporting such organizations as Students Against Drunk Driving, and Anti-Bullying Club." The District Court correctly observed that Plaintiffs fail to allege which speakers put up the organizational stickers, depriving that item of any significance as a comparator to Ecke. Item "e" lists "Professional sports team flags,

---

[12] In the Statement of the Case in Appellants' Brief here, they misrepresent the record. They say that Defendants permitted "by way of example, the display of sports flags, and a neo-Nazi Confederate flag, and a Blue Lives Matter Flag *in classrooms*." (Emphasis added.) Appellants' Brief, p. 5. They cite to ¶ 106 of the Amended Complaint [A-35], but that allegation places these items in a parking lot, not a classroom.

[13] Who painted the flags in the parking lot matters a great deal. Student speech falls under *Tinker v. Des Moines*, 393 U.S. 303 (1969) and its progeny. Teacher speech could fall under *Garcetti v. Ceballos*, 547 U.S. 410 (2006) or *Hazelwood v. Kuhlmeir*, 484 U.S. 260 (1988). A student's political statement in a parking lot is unlike a teacher's political statement during class under First Amendment jurisprudence.

such as the New York Rangers." Judge Gonzalez correctly observed that the "the Amended Complaint does not allege *who* exactly displayed that flag or *where* the flag was displayed." (A-223.)

Item "f" lists a "Prominent 9/11 Memorial display in the Oakdale Bohemia Middle School." This one also is bereft of detail about who, when, and where it was used, rendering it too vague to be a comparator to Ecke's classroom wall flags. Beyond that, attempting to find something nefarious in a 9/11 memorial display at a middle school on Long Island, where the friends or families of students likely suffered in that tragedy, shows just how frivolous this claim is.

Finally, the District Court correctly found that personal religious jewelry worn by students, teachers, or employees of the District are not comparable to a teacher's display of political symbols on her classroom wall.

Appellants do not argue that the District Court was wrong to search the pleading for comparators. They also do not claim the District Court overlooked any pled details about the alleged comparators that make them truly comparable to Ecke's classroom flags.

Instead, Appellants try to fall back on the argument that they do not need comparators where they can show an improper motivation or discrimination. As argued in POINT IV(B), *supra*, the District Court correctly examined the emails

Plaintiffs attached to the Amended Complaint and concluded that the pleading failed to show an improper motivation for the District's action.

## VI. THE DISTRICT PROPERLY DISMISSED THE *MONELL* CLAIM.

Notwithstanding Plaintiffs' inability to show any constitutional violation, they cannot establish a *Monell* claim from the directive to remove flags from classrooms by Superintendent Adams and other administrators because they are not a final policy promulgated by a final policymaking authority.

"Because there is no *respondeat superior* under Section 1983, the District is not liable for the acts of employees unless there was a policy or custom that caused the plaintiff to be deprived of a constitutional right." *Baeringer v. Plainview-Old Bethpage Cent. Sch. Dist.*, No. 23-CV-03557, 2024 WL 3161814, at *4 (E.D.N.Y. June 25, 2024). "A 'policy or custom,' in turn, may be shown only though 'the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to have the force of law.'" *Id.* (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

A superintendent and school principal are not final policymakers for a *Monell* claim. *See Vasquez v. Yonkers Pub. Sch. Dist.*, No. 24-1220, 2025 WL 893368, at *2 (2d Cir. Mar. 24, 2025) (superintendent was not final policymaker for *Monell* claim); *Agosto v. N.Y.C. Dept of Educ.*, 982 F.3d 86, 98-99 (2d Cir. Dec. 4, 2020) (school principal is not a final policymaker for *Monell*); *see also Baeringer,* 2024 WL

3161814, at *5 (Board of Education, not the principal, was final policymaker, dismissing *Monell* claim on a Rule 12(b)(6) motion).

In *Vazquez*, this Court explained that the school superintendent's alleged conduct cannot fairly be said to represent official policy for the entire municipality. "'It is not enough' that the superintendent 'had discretion to make a decision that was unreviewable' when he lacked 'state-law authority to adopt rules for the conduct of the municipal government." 2025 WL 893368, * 2.

In *Agosto v. New York City Department of Education*, 982 F.3d 86, 92 (2d Cir. 2020), this Court held that "The authority to make policy 'necessarily' means 'the authority to make *final* policy.' Stated another way, the official must have had state-law 'authority to adopt rules for the conduct of [the municipal] government." (citations omitted.)

Plaintiffs cannot show that Superintendent Adams or any subordinate of Adams had the authority to make *final* policy for the District. Indeed, when the administrators acted about flags and stickers, they said that they were operating under a Board of Education policy, Policy 1310, which prohibits school employees from engaging in political activities on school premises.

Plaintiffs do not challenge Policy 1310, and they do not challenge the actions of final policymakers.

Courts in this Circuit have recognized that the Board of Education, rather than the superintendent or other administrators, are final policymakers for *Monell* claims. *See Wang v. Bethlehem Cent. Sch. Dist.*, No. 121CV1023, 2022 WL 3154142, at *11 (N.D.N.Y. Aug. 8, 2022) (Board of Education, not superintendent was final policymaker over student discipline); *Singh v. Sachem Cent. Sch. Dist.*, No. 20-CV-00146, 2025 WL 1616622, at *28 (E.D.N.Y. June 6, 2025) (same).

## VII. THE DISTRICT COURT PROPERLY DECLINED TO EXERCISE SUPPLEMENTAL JURISDICTION OVER State-law CLAIMS.

Under 28 U.S.C. § 1367(c)(3), federal courts may decline to exercise supplemental jurisdiction over state-law claims where "the district court has dismissed all claims over which it has original jurisdiction." *Chapman v. Crane Co.*, 694 F. App'x 825, 828 (2d Cir. 2017). This is especially true where the state-law claims are subject to different standards than the federal claims. *See Hansen v. City of New York*, No. 24-cv-2808, 2025 WL 588119, at *9 (S.D.N.Y. Feb. 24, 2025) ("[T]he Court declines to exercise supplemental jurisdiction over [plaintiff's] other state and local claims because they are subject to different standards and must be analyzed separately.")

The lower court here declined to exercise supplemental jurisdiction over the state-law claims after dismissing all federal claims. Because recent amendments to the New York State Human Rights Law diverged the standards under that law from those of Title VII, the lower court properly remanded the state court claims. *See Chapman*, 694 F. App'x at 828.

Appellants do not dispute the divergence of state and federal standards, but they do challenge the lower court's decline of supplemental jurisdiction under 28 U.S.C. § 1367(c)(1) on the ground that the remaining state claims present "novel and complex" issues of state law.

In any event, Appellants have already refiled their state-law claims in Supreme Court Suffolk County. *See Dolce et al. v. Connetquot Cent. School District et al.*, Index No. 624469/2025. It would accomplish nothing by forcing the District Court to keep the remaining state law claims at this point.

## VIII. THE DISTRICT COURT HAD GOOD REASON FOR NOT GRANTING LEAVE TO AMEND THE COMPLAINT AGAIN.

First, Plaintiffs did not ask the District Court for permission to amend their complaint a second time. Second, they did not tell the District Court what changes they would make with a second amendment. They do not do so here, either.

Plaintiffs did not tell the District Court and do not tell this Court what facts they would add, what details they overlooked, or exactly what they could do to revive their moribund pleading.

Although courts usually afford a party leave to amend a pleading, "a court may deny a plaintiff's request to amend 'for good reason,'" including futility. *See Zappia v. Myovant Scis. Ltd.*, No. 24-253-CV, 2025 WL 338351, at *4 (2d Cir. Jan. 30, 2025) (quoting *Miller v. United States ex rel. Miller*, 110 F.4th 533, 550 (2d Cir. 2024)). "A request to amend is futile if it 'would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6).'" *Id.* (quoting *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216, 225 (2d Cir. 2017)).

In *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014), this Court explained that "A plaintiff need not be given leave to amend if it fails to specify either to the district court or to the court of appeals how amendment would cure the pleading deficiencies in its complaint."

Although Appellants conclusorily assert now that they can cure deficiencies in their pleading, they have a bigger problem. As the lower court held, Plaintiffs

pleaded *too many* facts unfavorable to them and destroyed their claims. They attached pages of email correspondence that supplied the essential facts underlying the flag removal directive. Judge Gonzalez observed that "By attaching this email to the Amended Complaint, Plaintiffs plead too much and essentially plead themselves 'out of court.'" *Dolce*, 2025 WL 1070079, at *13 (quoting *VanBrocklen v. United States*, No. 08-cv-312, 2009 WL 819382, at *4 (N.D.N.Y. Mar. 26, 2009)).

Plaintiffs cannot make the unhelpful facts they included in their Amended Complaint magically disappear. Any further amendment would be futile.

## CONCLUSION

For the reasons set forth above, Defendants-Appellees respectfully ask this Court to affirm the decision of the District Court, with such other and further relief as this Court deems proper and just.

Dated: Carle Place, New York
November 5, 2025

SOKOLOFF STERN LLP
*Attorneys for Defendants-Appellees Connetquot School District, Connetquot Board of Education, Lynda G. Adams, Reza Kolahifar, and Jaclyn Napolitano-Furno*

/s/ Brian S. Sokoloff

By: Brian S. Sokoloff
Blair J. Hendricks
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 220193

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4) (A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 9,497 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Times New Roman.

Dated: Carle Place, New York
November 5, 2025

SOKOLOFF STERN LLP
*Attorneys for Defendants-Appellees Connetquot School District, Connetquot Board of Education, Lynda G. Adams, Reza Kolahifar, and Jaclyn Napolitano-Furno*

/s/ Brian S. Sokoloff

By: Brian S. Sokoloff
Blair J. Hendricks
179 Westbury Avenue
Carle Place, New York 11514
(516) 334-4500
File No. 220193